Dixie **HAMILTON** et al., Appellants,

v.

Billie B. **FANT** et al., Appellees.

No. 11548.

Court of Civil Appeals of Texas.

Austin.

Dec. 20, 1967.

Harris & Holbrook, Killeen, Mitchell, Gilbert & McLean, Arthur Mitchell, Austin, for appellants.

C. Gordon Metcalf, Temple, for appellees.

O'QUINN, Justice.

This lawsuit was filed to recover for damages to seven acres of land in the

Keys Valley area in Bell County caused by cedar choppers who cut and carried away about 900 choice cedar trees growing on the property.

The landowners were awarded judgment, based on favorable findings of a jury, in the amount of $3,500, being the difference the jury found between the market value of the land before and after the trees were cut down.

The defendants below were not the cedar choppers, but were two landowners whose property abutted the seven acres who, the jury found, negligently allowed the cedar cutters, while working on defendants' land, to get over by mistake on the tract belonging to plaintiffs.

Defendants have appealed and assign ten points of error. We overrule all points of error and affirm the judgment of the trial court.

Billie B. Fant in 1963 owned more than 200 acres of land, some of which would front on the proposed Stillhouse Hollow Lake to be created by a dam on the Lampasas River. Fant sold all but about 15 acres to Dr. Dixie Hamilton and Dee De-Onofrio, both of Killeen, who were defendants in district court. The 15 acres Fant retained were divided into three five-acre tracts, two of which Fant transferred to his sisters, Fannie Mae Hurst and Margaret Concillo, who, with Fant, became plaintiffs below.

Sometime in May, 1964, Appellants De-Onofrio and Hamilton contracted with one James Jasper Pierce, a cedar cutter by trade, to cut cedar from their land on the shares. Appellants were to receive one-fourth of the yard price when the cedar was cut and sold. Pierce hired several other skilled cedar cutters to help him, and the workmen furnished their own tools and equipment.

After cutting cedar for some time on appellants' tract, the cutters reached a creek that Pierce testified was hard to cross with loads. It was then that De-Onofrio gave Pierce directions for reaching the other side of the creek by a gate through which he could haul the cedar cut from land on the opposite side of the creek. Pierce went through the wrong gate, entered the Fant property, and cut seven acres of cedar on the Fant land before Fant discovered the cutters and stopped their work.

The jury found, in answer to special issues, that appellants failed to instruct Pierce and the other cutters as to the location of the boundary line between appellants' property and the Fant property. The jury found this failure to be negligence and a proximate cause of the damages sustained by the Fants. The jury also found that appellants instructed Pierce to enter upon the Fant property, that this was negligence, and was a proximate cause of the damages.

The jury found that the Fant seven acres had a reasonable market value of $700 an acre immediately before the trees were cut down and a reasonable market value of $200 an acre immediately after the trees were cut. As already noted, upon these findings the trial court entered judgment for appellees in the sum of $3,500.

Appellants seek to reverse the trial court on four propositions under their ten points of error. The first contention, under point one, is that the trial court used an incorrect measure of damages in submitting issues to the jury. Appellants insist that the proper measure of damages in this case is the value of the timber cut and not the reduction in market value of the land itself.

It is undisputed that the property owned by Billie B. Fant and his sisters is "lake front property" overlooking the water of Stillhouse Hollow Lake. William L. Bremser testified that he had owned property around Stillhouse Hollow since 1951, having subdivided and sold lots from his land, and was familiar with the Fant land and with property values in the area. It

was his opinion that the highest and best use for the Fant property was for subdivision, private residences, and lake cottages. He testified that "when you take a tree off of anything and you are going to subdivide it, it would decrease the value."

Bremser testified that "prior to the cutting of the trees, as rough acreage, this [Fant] land would be worth about seven hundred dollars an acre, and after cutting the trees * * * at the outside, at the most, two hundred dollars" an acre. Fant testified that he had intended using the land for subdivision purposes and had engaged an engineer to survey and lay out the property in lots prior to the cedar cutting. His testimony was that cutting the cedar had diminished the land value $500 per acre. DeOnofrio himself testified that since the cedar had been cut from appellants' adjoining tract, he and Dr. Hamilton had had their land on the market for $200 an acre but at the time of trial still could not "find any takers."

It was shown at the trial without contradiction that the cedar choppers "cut down the big choice trees * * * and left all the scrub brush, and * * * topped all those that were big trees." Some of the choice trees were twenty inches in diameter, and "some 900 trees" were removed from the seven acres. The cutters left the Fant land as "cedar-lapped brush all through" with "stumps and brush and scrub trees * * * and tops of trees." Fant estimated it would cost $300 to $400 just to remove the debris. Fant testified that appellants did not pay him "a share of what they got from the cedar posts."

■ We believe that under the facts of this case the trial court applied the correct measure of damages in charging the jury to find in effect the diminution in value of the land.

■ It is proper to consider the use to which the land is adapted in determining the value of the land and the damage sustained. Whitehead v. Zeiller, 265 S.W.2d 689 (Tex.Civ.App., Fort Worth, no writ). The principle upon which compensation is awarded for damage to real property is that the owner should be reimbursed to the extent of the injury to the property. Whitehead case, 265 S.W.2d 689, 691, col. 2.

■ The Supreme Court of Texas in 1956 stated the rule that if the trees have only a value with reference to the land, such as for shade or ornamentation, the proper measure of damages is the difference in the value of the land before and after the trees are destroyed or removed. Cummer-Graham Co. v. Maddox, 155 Tex. 284, 285 S.W.2d 932.

While the cedar trees may be presumed to have some value as posts, although there is no evidence in the record as to what this value might be, their essential importance to the land for shade and ornamentation would certainly appear to be their real value. Removal of trees from lakefront property, already cut into small tracts and subject to further subdivision into residential lots, even though the timber removed is sold for posts or firewood, is not the same as cutting trees from land adapted to stock-raising or to growing timber crops. We think the proof was sufficient that the trees cut down on the Fant property had such value with reference to the land that their value as posts in comparison was too insubstantial to take this case out of the rule of Cummer-Graham Co. v. Maddox, supra.

In Lucas v. Morrison, 286 S.W.2d 190 (Tex.Civ.App., San Antonio, no writ), the Court approved an exception to the general rule of measure of damages with regard to destruction of trees. The Court allowed the owner to recover the intrinsic value of shade trees, although the value of the shade trees in proportion to value of the entire farm was of such insignificance as not to affect the market value of the farm. The converse of these facts are found in the case at bar. While it may be

presumed the cedars cut down had some timber or detached value, to hold appellees' recovery to this value, and deny recovery for the real and substantial injury to the land for its highest and best use, would be to refuse reimbursement to the extent of the injury to the property. For application by this Court of the rule of Cummer-Graham Co. v. Maddox, supra, in another case involving removal of shade trees, see Southwestern Bell Telephone Co. v. Willie, 329 S.W.2d 466 (Tex.Civ.App., Austin, writ dsmd.).

■ Appellants made no objection to the testimony of Bremser or to that of Fant as to value of the Fant land before and after the timber had been cut. Nor did appellants object to the trial court's charge submitting the issues by which the jury found the land values before and after the trees were destroyed. Complaint is made for the first time on appeal that the trial court applied an incorrect measure of damages. Appellants have waived any objections to the court's charge on the ground of a wrong measure of damages. The point of error now urged that the court's charge permitted the jury to find damages based on an incorrect measure may not be sustained and must be overruled. Howell v. Bowden, 368 S.W.2d 842 (Tex.Civ.App., Dallas, writ ref., n. r. e.); Rule 274, Texas Rules of Civil Procedure.

Under points of error two, three, and four appellants contend that there was no evidence and insufficient evidence to support the findings of the jury as to value of the land before and after the cedar was cut, and that the findings were contrary to the overwhelming weight of the evidence. Under these points appellants argue that the jury's response to the special issues was speculative, being based upon market value of subdivided lake property.

■ We find no testimony that the Fant property had been subdivided into lakefront lots. Fant testified that he had employed an engineer to make the necessary survey and plat to effect subdivision, but said the work had not been performed. The jury was not asked to arrive at value of the land as a subdivision. Bremser simply testified that the highest and best use of the land was for subdivision purposes. The value Bremser put on the land was "as rough acreage" before and after the cutting. Fant testified the land was owned by him and his sisters in five-acre tracts. We consider there was sufficient evidence as to the value of the land as acreage, best adapted to subdivision purposes, to support the jury's findings of value. We are unable to agree that the jury's response could be denominated speculative, in view of the evidence adduced and the issues submitted as to value.

For these and the additional reasons already stated, we overrule these points of error.

By points of error five, six, and seven appellants contend there was no evidence and insufficient evidence to support the findings of proximate cause in connection with instruction appellants gave and failed to give to Pierce. Appellants also assert that the overwhelming weight of the evidence was against the findings of proximate cause.

The basis for these contentions is that it was not foreseeable that damages would result from the failure to instruct Pierce as to boundary of the property and to instruct him to enter the Fant property.

The evidence shows that after Fant sold the major portion of his land, known then as the Circle C ranch, the parties did not erect a fence between the tract sold to appellants and the part retained by Fant. A creek separated the tracts along a part of the boundary, but there were several creeks. Fant furnished appellants a set of field notes and a map after a survey of the two tracts was made. DeOnofrio testified he was uncertain about the exact extent of his land.

It was clear from the testimony of Pierce that he was a person who might become confused. He had told DeOnofrio he was familiar with the Circle C ranch as he had known it under an earlier ownership.

After DeOnofrio made known to Fant that he was considering a cedar cutting contract with Pierce, Fant advised DeOnofrio that he did not want cedar cutters to "cross the creek over on" the Fant property. Fant told DeOnofrio that he did not want "a cedar cutter on [his] * * * piece of property." DeOnofrio informed Fant of the cedar cutting plans because Fant held a deed of trust on the acreage he had sold to appellants. Fant consented to cedar cutting on appellants' land, but observed to DeOnofrio that he could have had the cedar cut during the seven years he owned the entire ranch if he had not "thought it would ruin it as lake property."

When Pierce finished the first part of the cutting, which was entirely on appellants' land, the creek, as we have already noted, presented an obstacle to moving truck loads of cedar to be cut elsewhere on appellants' property. DeOnofrio gave Pierce instructions for approaching the property along a road on the opposite side of the creek. There was a conflict in the evidence as to whether DeOnofrio told Pierce to go through a wire "gap" or a wire "gate" to reach the other side of appellants' tract.

But it is clear that neither DeOnofrio nor Dr. Hamilton went on the premises to point out to Pierce the boundaries of their land and to identify land marks, gates, and creeks, or to indicate on the ground the areas in which Pierce and his cutters were authorized to work. It is undisputed that all instructions given Pierce by appellants were away from the land, usually at DeOnofrio's place of business in Killeen. The instructions to Pierce were oral, and there is no testimony Pierce was shown the map Fant had furnished appellants showing the boundaries. Pierce testified DeOnofrio told him to use a wire "gap" and then "cut back toward the house" which was on appellants' land. By entering the wire "gap," which was half a mile down the road from a wire "gate," Pierce entered the Fant property instead of appellants' land and started cutting in the direction of the house. It appears that if Pierce had entered the wire "gate," he would have been properly on appellants' land. Appellants did not know that Pierce was cutting cedar on the wrong tract until Fant discovered the cutters, stopped their work, and notified DeOnofrio he expected reimbursement for damages.

Appellants filed written objections to the court's charge submitting the issues of proximate cause. The objections complained that there was no evidence, insufficient evidence, and no probative evidence to warrant submission, and that submission of the issues was against the preponderance of the evidence and constituted comment on the weight of the evidence.

Appellants on appeal complain that it was not foreseeable that the damages would result from appellants' instructions to Pierce. The court submitted a correct definition of proximate cause in which the jury was instructed in part that, "To be a proximate cause of an event it should be such a cause as that it could have been reasonably anticipated and foreseen by a person of ordinary prudence in the exercise of ordinary care that the event or some similar event would occur as a natural and probable consequence." No objection was made to the definition submitted.

Fant warned DeOnofrio that he did not want the cutters to get across the creek and did not want them to come on his land. DeOnofrio knew that Fant considered the cedars valuable to the land as lake property. If Pierce's testimony as found in the record is a fair example of his want of capacity for complete understanding, and we have no reason to believe otherwise, then appellants as persons of ordinary prudence

in the exercise of ordinary care could have reasonably foreseen that oral instructions such as were given, as a natural and probable consequence, would be the cause of Pierce cutting cedar on the wrong property.

■ We believe the evidence adequately supports the finding of the jury that the failure of appellants to instruct Pierce as to the boundary, and their instruction to Pierce to enter the Fant property, was in each instance a proximate cause of the damages sustained.

In response to special issue No. 9, the jury replied in the negative to the inquiry as to whether Pierce "was acting as an independent contractor at the time of the cedar cutting involved in this case." Under points eight, nine, and ten appellants urge that there was no evidence and insufficient evidence to support this finding, and that the finding was contrary to the overwhelming weight of the evidence.

■ This issue was requested by appellants. The burden of proof was on appellants in the trial court to show by a preponderance of the evidence that Pierce acted as an independent contractor. The jury obviously concluded that appellants failed to meet the burden of this proof.

The evidence shows that Pierce made the working arrangement with DeOnofrio and then engaged other cutters to participate in the work. The cutters worked by their own hours, hauled the posts to the cedar yard, sold them, collected the money, and then paid one-fourth, based on records supplied by the yard, to appellants. The cutters furnished the tools and equipment used in the work. DeOnofrio controlled where the cutting would be done. At the outset DeOnofrio told Pierce not to go beyond the creek. When asked at the trial why he thought DeOnofrio did not want him to go across the creek, Pierce replied, "Well, we had to stand up to standards when we cut it; like, if we go out to cut the timber, paying a guy a fourth,

and if we don't cut all the posts like he wants it done, then he can tell us to get out."

Appellants made no objection to the definition of independent contractor submitted by the court with the issue and did not object to submission of the issue in the form employed by the court. The record does not disclose that appellants moved for instructed verdict at the conclusion of the evidence, nor did they file motion for judgment notwithstanding the verdict. Appellants contend on appeal that "the undisputed evidence in this case demonstrates that an employer-independent contractor relationship resulted from the work agreement."

Appellees alleged as a basis for their suit a theory of primary liability on the part of appellants for their negligence. There was no allegation and no contention that appellants' liability was of a vicarious nature in connection with the negligence of Pierce. The theory of appellees' case embraces the contention that the landowner has a duty to give proper instructions even to an independent contractor for work done on the owner's property.

■ In this case we think it clear from the record that appellants reserved the right to direct the work of the cedar cutters to the extent that the workers were told where to cut and how to reach areas in which additional cutting was to be done. Pierce testified, as we have noted, that he understood appellants could tell him to get out if Pierce did not "cut all the posts like [appellants wanted] * * * it done." We believe that with appellants retaining the controls indicated, Pierce did not become an independent contractor, and the jury had sufficient evidence so to find. Whether the right retained by appellants is designated a control or an interference, we feel it prevented Pierce from becoming independent in the sense that appellants were relieved of responsibility. Appellants were properly held liable for injuries nat-

urally flowing from such control or interference. 27 Am.Jur., Independent Contractors, sec. 31, p. 510; 30 Tex.Jur.2d, Independent Contractors, sec. 31, p. 520.

The judgment of the district court is affirmed.

Affirmed.