Harold BURRIS, Appellant,

v.

Eva KROOSS, Appellee.

No. 5099.

Court of Civil Appeals of Texas, Eastland.

March 16, 1978.

James D. Coffee, San Antonio, for appellant.

Joseph R. Krier, Groce, Locke & Hebdon, San Antonio, for appellee.

WALTER, Justice.

Harold Burris filed suit against Eva Krooss seeking damages for the cutting of certain shade trees on his property. Burris alleged Krooss negligently failed to ascertain the location of the boundary line dividing her property from Burris' property. After the jury's verdict favoring Burris, the court granted Krooss' motion for judgment non obstante veredicto and Burris has appealed. We reverse and render.

In October, 1975, John Lerette asked Krooss for permission to cut down some trees on her property. Lerette planned to sell the trees as firewood. Krooss authorized Lerette to cut down "a load or two" of trees. The property was heavily wooded and there was no evidence of a fence or other landmarks indicating where the boundary line was other than the surveyor's "cuts" and "marks". Lerette's brother, Henry Lerette, drove Lerette and Krooss' minor daughter to the property where the daughter showed Lerette the boundary stakes. Krooss did not accompany Lerette to the property.

In answer to Special Issues, the jury found: (1) trees were cut from Burris' property on or about October 18, 1975; (2) the trees were cut by an employee of Krooss; (3) Krooss failed to ascertain the location of the property line dividing the property owned by Burris and Krooss for said employee; (4) such failure on the part of Krooss was negligence; (5) such negligence was a proximate cause of the occurrence in question; (6) the market value of Burris' property immediately before the occurrence was $4,000; and, (7) the market value of Burris' property immediately after the occurrence was $1,000.

Burris contends Krooss had a duty to ascertain the location of the dividing property line; there was some evidence Krooss failed to ascertain the location of the dividing property line; and, there was some evidence that the negligent failure to ascertain the location of the dividing property line was a proximate cause of the occurrence in question. We agree.

■ A landowner who intends to have timber cut on his land owes a duty to an adjoining landowner to ascertain the boundary line of the adjoining land with diligence and care. A failure to discharge this duty may subject the landowner to damages resulting from such failure. *Kirby Lumber Corporation v. Karpel*, 233 F.2d 373 (5th Cir. 1956); *Ripy v. Less*, 55 Tex.Civ.App. 492, 118 S.W. 1084 (1909, no writ). When Krooss authorized Lerette to cut trees on her property, she assumed the duty to ascertain for Lerette the boundary lines of her property with diligence and care.

In considering Burris' evidential points of error, we must apply the following rule stated in *Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex.1974):

". . . To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have made the findings relied upon. In acting on the motion, all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor . . . "

Henry Lerette testified Krooss did not go to the property with him and his brother. He stated Krooss' daughter went with them and pointed out the boundary stakes to his brother.

Krooss testified as follows:

"Q Roughly. Approximately, where did you authorize Mr. Lerette to cut down trees?

A On my property.

Q All right, did you give him specific instructions as to where?

A Well, the property, you know, more or less, in the front, the property towards the street, towards Loma View. Simply for the reason the rest of the property is very brushy, a very brushy area.

. . . . .

Q Okay. Did you have any opportunity to supervise him?

A No, sir.

Q Did you—you just gave him kind of a Carte Blanche authority?

A No, sir. I did send my daughter out to the lot with him to show him where the lot is.

Q Did you notice after you gave him authority to take these particular trees off, or whatever, type of authority you gave him, did you notice, subsequent to that, where he took the trees off?

A  Not immediately, no.

Q  You didn't—in other words, you didn't go out and immediately see that he was to take the trees only off of one particular area?

A  Right. No, I did not.

Q  When did you discover or did you ever check to see?

A  I didn't go out there, no not after the, you know, after he was out there to cut wood."

■ The testimony by Krooss and Henry Lerette is some evidence of probative force that Krooss failed to discharge her duty with diligence and care. The jury could properly conclude from the evidence that a person of ordinary prudence in the exercise of ordinary care could have reasonably foreseen the probable consequence of failing to ascertain the location of the boundary line. The issue on proximate cause is, therefore, supported by some evidence.

■ Burris also contends the proper measure of damages is the difference between the fair market value of the land before and after the occurrence in question, and there is some evidence to support the jury's findings on damages. We agree.

The proper measure of damages for fallen trees was explained in *Cummer-Graham Co. v. Maddox,* 155 Tex. 284, 285 S.W.2d 932 (1956):

"The rule generally is, we think, as stated in *Grell v. Lumsden,* 206 Iowa 166, 220 N.W. 123, 125:

'* * * If the thing destroyed or removed from real property, although a part thereof, has a value which can be accurately measured or ascertained without reference to the soil on which it stands, the recovery is the value of the thing thus destroyed or removed, and not the difference in the value of the land. * * *.'

On the other hand if the trees have only a value with reference to the land such as for the purpose of shade or ornamentation or if they be fruit trees or young growth which has no market value, then the proper measure of damage would be the difference in the value of the land before and after . . ."

In *Cummer-Graham Co.,* a timber deed to soft wood timber was conveyed to Cummer-Graham Co. who subsequently cut certain elm and gum timber not included in the timber deed. The Supreme Court held the proper measure of damages to be the stumpage value of the timber. The court recognized that under some circumstances a landowner's damages in a tree-cutting case would be measured by depreciation in market value of the land.

In *Hamilton v. Fant,* 422 S.W.2d 495 (Tex.Civ.App.—Austin 1967, no writ), plaintiffs owned lakefront property on which defendants' employees had cut certain cedar trees. Defendants were found negligent in failing to instruct the cedar cutters as to the location of the boundary lines. The court stated:

". . . While it may be presumed the cedars cut down had some timber or detached value, to hold appellees' recovery to this value, and deny recovery for the real and substantial injury to the land for its highest and best use, would be to refuse reimbursement to the extent of the injury to the property . . ."

The court held the proper measure of damages to be the diminution in the fair market value of the land.

Burris was attracted to the property adjoining Krooss' property because of the "nice view" and "beautiful trees". Burris and his wife often visited the lot and planned to build a home there which would "complement" the rocks and trees. As in *Hamilton,* the trees only had an ornamental value. Burris would be denied recovery for the real and substantial injury to the land if the detached value of the trees applied. The trial court properly determined the measure of damages to be the depreciation in the fair market value of the land.

■ The jury found the fair market value of Burris' property to be $4,000 before the trees were cut and $1,000 after the trees were cut. Burris contends there is some evidence to support these findings.

William H. Kemble, the realtor who handled the sale of the property to Burris, testified Burris bought the lot in 1974. Burris testified as follows:

"Q  What did you pay for it?

A  In the four thousand dollar—forty some odd—

Q  Plus interest?

A  Oh, yes."

▪ Evidence of the purchase price of real and personal property has been held to be some evidence of value. In *Houston & T. C. R. Co. v. Westbury*, 208 S.W. 383 (Tex.Civ.App.—Texarkana 1919, no writ), the court stated:

"  .   .   .  The evidence of market value is derived from the observation of sales made in the due course of trade. One sale furnishes some evidence, and where there is no proof to the contrary it is not improper to assume that a sale proven without objection is one which occurred in the normal and usual course of business and at the prevailing market price. We are therefore of the opinion that under the circumstances the court had a right to conclude that the goods were sold at their market value  .   .   . "

The Texarkana Court of Civil Appeals later stated in *American Indemnity Co. v. Jamison*, 42 S.W.2d 801 (Tex.Civ.App.—Texarkana 1931, no writ):

"  .   .   .  Though the price paid by the appellee was not conclusive of the market value, yet was some evidence of that value at the place where the purchase was made, and might be taken into account with other evidence  .   .   . "

In *First National Bank of Rockport v. Brown*, 15 S.W.2d 563 (Tex.Comm'n App. 1929), Commissioner Nickels stated, "If it were true, then, that 'price' is not of itself 'value', the circumstances of agreement on 'price' nevertheless is (at least) some evidence of 'value'  .   .   . "

▪ The fact that Burris purchased the lot for $4,000 one year before the property was damaged does not conclusively establish the fair market value at the time of the injury, but it is some evidence of such value. The jury's finding of $4,000 is, therefore, supported by some evidence.

The jury's finding of $1,000 is supported by Burris' testimony of the purchase price and the testimony of Kemble, which is as follows:

"Q  Okay.  Are you familiar with a subdivision called Northwood Hills Subdivision?

A  Yes.

Q  Okay.  Approximately, how many transactions have you handled out there?

A  About forty-five or fifty.

Q  Forty-five or fifty.  Are you familiar with the fair market value?

A  Yes, sir.

Q  Okay.  Are you familiar with the lot in controversy here, which purports to be Lot 204, County Block 4919–A, Northwood Hills Subdivision, owned by Mr. Harold Burris?

A  Yes.

Q  Observing the property as you knew it when it—the condition it was in when it was sold, and observing the property now with the trees that you say have been chopped down, do you have an opinion as to whether there is an increase or decrease, in light of the fact that those trees are gone, as to the value of the property?

A  I would say the removal of any trees on a residential property like that would tend to decrease the property value.

Q  Okay.  As to this particular piece of property, do you have an opinion as to what the value, increase or decrease would be, as to the removal of the trees that you saw, personally observed?

A  I would say—

Q  Would you tell me that value as to this particular piece of property?

A  I would estimate it to be, approximately, two to three thousand dollars."

In a cross-point, Krooss contends the jury's finding that the trees were cut by her employee should be disregarded because there is no competent evidence and no issue submitted on whether the employee was acting in the course and scope of his employment at the time the negligent act was committed. This cause was submitted to the jury on the theory that Krooss negligently failed to ascertain the boundary line dividing her property from Burris' property; it was not submitted on the theory that Krooss' employee committed a negligent act. The issue whether the trees were cut by an employee of Krooss and consequently whether said employee was acting in the course and scope of his employment is immaterial. *Kirby Lumber Corporation v. Karpel,* 233 F.2d 373 (5th Cir. 1956); *Hamilton v. Fant,* 422 S.W.2d 495 (Tex.Civ.App.—Austin 1967, no writ).

We have carefully reviewed Krooss' cross-points and find no merit in them. They are overruled.

Judgment of the trial court is reversed and remanded in favor of Burris for $3,000.