**UNITED POSTAGE CORP. and Bill N. Raulerson, Appellants,**

v.

**Calvin KAMMEYER, Appellee.**

**No. 19663.**

Court of Civil Appeals of Texas, Dallas.

April 13, 1979.

Toby L. Gerber, Berman, Fichtner & Mitchell, Dallas, for appellants.

Bertran T. Bader, III, Bader & Cox, Dallas, for appellee.

Before GUITTARD, C. J., and STOREY and HUMPHREYS, JJ.

STOREY, Justice.

United Postage Corporation and William Raulerson appeal from a judgment awarding treble damages and attorney's fees against them, jointly and severally, for asserted violations of the Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Comm.Code Ann. § 17.41 *et seq.* Tex.Laws 1975, ch. 62, at 149. We affirm, in part, the judgment against the corporation and reverse and render the judgment against Raulerson.

The defendants contend the judgment should be reversed, because: (1) there is no evidence or insufficient evidence to support answers to special issues; (2) plaintiff is judicially estopped to claim reliance upon the representations;˙ (3) findings to defensive issues were improperly disregarded; (4) representations made in the sale of services are not proscribed by the Act; (5) the Act violates due process and protected commercial speech under federal and state constitutions; (6) the measure of damages submitted and found was improper; and (7) the Act does not impose liability upon Raulerson.

This action is governed by subchapter E, Texas Business and Commerce Code as amended effective September 1, 1975. Tex. Laws 1975, ch. 62, at 149. The Act grants a private right of action to a consumer who has been adversely affected by conduct proscribed by the Act, section 17.50; and the legislature has mandated the Act be liberally construed and applied to accomplish its purpose to protect consumers against false, misleading and deceptive business practices. Section 17.44. Certain sections of the Act declare, in general terms, deceptive, misleading or unconscionable conduct to be unlawful. Sections 17.46(a) and 17.50(a)(3). However, we are primarily concerned in this case with section 17.46(b) which proscribes specific acts or conduct.

The transaction out of which the suit arose was plaintiff's purchase of five coin-operated postage stamp vending machines from United Postage Corporation by a written contract dated December 19, 1975. These machines were placed on location during January 1976, by one of the company's professional locators. On January 27, 1976, plaintiff signed an identical purchase agreement for three additional machines, which were also placed on location by the company.

Plaintiff operated his vending route during the remainder of January 1976, and through February and March; thereafter, he serviced the route sporadically until June or July because, by the end of March, he had decided to go out of business. He made this decision, as he testified, because he was spending *more* time than anticipated, the

machines were malfunctioning, and the level of sales was unsatisfactory. Efforts to sell the machines on location proved unsuccessful, so that they were removed to plaintiff's garage where further efforts to sell them as used machines were also unsuccessful.

The alleged deceptive acts and practices occurred before and after purchase of the machines. In November 1975, the corporation placed an advertisement in a Houston Newspaper offering the reader an opportunity to establish himself in a "very profitable" postage stamp vending business. Claiming an investment could be made with safety and "no one has ever lost a dime in United Postage Corporation," it advertised to furnish an investor complete training, dispensing equipment, and routes of established locations to be installed by the company.

Plaintiff responded to the advertisement and received a form letter from the company's Executive Vice-President, William J. Bowman, lauding the merits of the vending machine industry in general and of the postage stamp vending industry in particular, and stating: "Our distributors are collecting thousands of dollars daily from their Postage Stamp vending routes . . .." The letter concluded that a personal interview would be arranged between plaintiff and a company regional director whose functions, among others, would be to determine if plaintiff were qualified to be accepted as a distributor.

An interview was arranged and the regional director, Jerome Walters, made a lengthy and somewhat "canned" sales presentation to plaintiff which contained numerous representations claimed by plaintiff to be false, misleading, and deceptive. According to plaintiff's testimony, Walters represented he was about to choose one additional distributor out of two or three applicants to serve the Houston area; the number of distributors would be limited; plaintiff, if chosen, would be the exclusive distributor in the west side of Houston; the company was ethically operated and set high standards for its personnel and distributors; the company had influence with United States Postal Service; the company would locate machines in high-profit locations and afford the distributor continuing advice and assistance in operation; a route would reach a profit level in six to seven weeks of operation, averaging five to eight vends per machine per day; in the event a distributor became disenchanted, the company would assist in the sale of his established route for which he might expect to receive three times his investment; and the machines were the best in the business and could possibly be sold without any loss as used machines not on location. Plaintiff claimed two additional acts of the company were deceptive and misleading: Walters, though titled regional director by the company, was a commission salesman; and National Discounts, Incorporated, a reference given by the company, proved to be the manufacturer of the machines, and one of its principal shareholders was also a principal shareholder of the company.

In its charge, the court submitted eighteen issues inquiring if the following representations made by the company were (a) false, misleading or deceptive, and (b) relied upon by the plaintiff:

(1) representing that commissioned salesmen were "regional directors";

(2) listing NDI Manufacturing Company as a reference;

(3) representing that distributors of United Postage Corporation are collecting thousands of dollars daily from their postage stamp vending routes;

(4) representing that purchasing a postage stamp vending distributorship would be profitable or highly profitable;

(5) representing that regional directors of UPC are authorized to interview and recommend appointment of distributors for UPC;

(6) representing that UPC has meaningful standards for the purchase of postage stamp vending machines other than sufficient cash to purchase;

(7) representing that UPC is an ethically operated company;

(8) representing that plaintiff could expect an average of five to eight vends per day per machine;

(9) representing that plaintiff could in time expect an average of in excess of eight vends per day per machine;

(10) representing that plaintiff would have an exclusive geographical distributorship area;

(11) representing that the number of distributors in a particular area is limited;

(12) representing that plaintiff could expect active help, assistance or guidance from UPC with his distributorship after his machines were installed;

(13) representing that a profitable level of vends on the postage machines would be built up in six to seven weeks;

(14) representing that plaintiff could sell his postage stamp vending route for a substantial profit;

(15) representing that UPC had a close working relationship with or influence with the United States Postal Service in the denomination of stamp booklets that would be issued;

(16) representing that no one has ever lost a dime with United Postage;

(17) representing that at the time plaintiff was considering whether to purchase the UPC machines, there were others who were ready to fill his spot;

(18) representing that UPC had already selected or would be in a position to select high profit locations for plaintiff's machines.

The jury found representations (5) and (18) to be not false, that the representation in (9) was not made and that (12) was not relied upon. The remaining issues were answered favorably to plaintiff.

After carefully reading the record of plaintiff's testimony, the newspaper advertisement and the correspondence, we conclude that there is sufficient evidence to support each of the jury findings.

Defendants base their attack on the jury's findings primarily on asserted judicial admissions which, they insist, negate any finding that plaintiff did or could have relied upon the representations made to him. Plaintiff testified that he read and fully understood the terms of the purchase agreement which clearly stated it did not grant exclusive territories, guarantee any specific earnings per machine, and that the purchaser "is not relying on any oral or written expressions, promises or warranties" other than those contained in the agreement. It disclaimed any warranties on the machines, except for the manufacturer's warranty, and set out specific terms of a guaranty by which a purchaser might recover his investment.

■ The provisions of the agreement could not constitute judicial admissions because they were not made in the course of judicial proceeding. Neither can plaintiff's testimony that he read and understood the agreement be so considered, because he also testified that he nevertheless relied upon the assurances of Walters that the terms would neither be binding upon nor enforced against him. A judicial admission is one which removes the admitted fact from controversy. The testimonial declaration of a party will not be given that effect unless it is deliberate, clear and unequivocal, and it must be considered along with the party's other testimony. *Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 901 (Tex.1976). To admit to understanding one set of representations does not preclude one from claiming he relied upon another and conflicting set. Plaintiff's testimony that he relied upon defendant's oral representations rather than statements contained in the agreement created a fact issue. *Conley v. Brownsville Medical Center*, 570 S.W.2d 583 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r. e.); *Martin v. Mann Merchandising, Inc.*, 570 S.W.2d 208 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.); *Leonard v. Smith*, 186 S.W.2d 284 (Tex.Civ.App.—Galveston

1945, no writ). We have no parol evidence problem here because evidence extrinsic to the written agreement is admissible to show false, misleading or deceptive practices as it is to show fraud. *Santos v. Mid-Continent Refrigerator Company*, 469 S.W.2d 24 (Tex. Civ.App.—Beaumont), writ ref'd n.r.e. per curiam, 471 S.W.2d 568 (Tex.1971).

■ Defendants claim that the trial court erred in disregarding findings that the representation "our distributors are collecting thousands of dollars daily" was the result of a bona fide error and that defendant did not have sufficient opportunity to cure defects in the machines. The court properly disregarded these findings because the defenses, bona fide error and opportunity to correct, were not made available in private actions until the 1977 amendments to the Act. Section 17.50A(1), (3). With respect to transactions before enactment of section 17.50A, the defense of bona fide error is limited to class actions, and is not applicable to this case. Tex.Laws 1975, ch. 62, at 149.

■ Defendants contend seven of the representations inquired about in the court's charge relates to the sale of services and should therefore be disregarded because of the commercial or business use exclusion formerly contained in subdivision (2) of section 17.46(b). Plaintiff, on the other hand, argues that each of the eighteen representations relate solely to the sale of goods and each falls within one or more of the twenty specific acts proscribed by section 17.46(b), sometimes referred to as the "laundry list." Before the 1977 amendments, "goods" were defined as tangible chattels or real property purchased or leased for use; and "services" as work, labor or service purchased or leased for use, for other than commercial or business use, including services furnished in connection with the sale or repair of goods. Tex.Laws 1975, ch. 62, at 149.

When we consider the nature of the "goods" here involved, it becomes apparent that one or more of the representations found by the jury are not within the exclusion. As pointed out above, "goods" are defined as "tangible chattels". This term is traditionally defined as those items of personal property which may be seen, weighed, measured, felt or touched. Webster's New International Dictionary (2d ed., unabridged, 1941), *See also* Tex.Tax.Gen.Ann. art. 20.01(P)(1969); and *Erwin, et al. v. Steele*, 228 S.W.2d 882 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.). A stamp vending machine is undoubtedly a tangible chattel, although, as is true generally of all coin-operated vending devices, it has a characteristic not normally possessed by most tangible chattels. In addition to its function as a dispenser, it serves as a salesman. For example, the machine here involved, was characterized by defendants as a "silent salesman", an "employee" needing supervision only once a week, an "employee" who never complains or goes on strike. It is, nevertheless, a tangible chattel within the definition of "goods" even though it possesses these additional characteristics.

■ Viewed in this light, several of the representations concerning the machine in question fall within at least one of the provisions of section 17.46(b). Representations that plaintiff could expect an average of five to eight vends per day per machine are not descriptive of its mechanical capacity, because each could mechanically dispense two hundred vends per day, but it is descriptive of its selling capacity. The same observation applies also with respect to representation (8) that plaintiff could expect an average of five to eight vends per day per machine. Consequently, we hold that these representations fall within section 17.-46(b)(5): representing that goods have characteristics, uses, benefits or quantities which they do not have. These findings are sufficient to support the judgment even though other findings may be within the exclusion. The Supreme Court faced a similar problem in *Spradling v. Williams*, 553 S.W.2d 143 (Tex.Civ.App.—Beaumont 1977), affirmed, 566 S.W.2d 561 (Tex.1978), and held:

> if any one of those listed acts or practices is found factually to have happened, it is by law an unlawful deceptive trade prac-

tice because subsection 17.46(b) makes it unlawful. . . . . Looking at the verdict in the case before us, there is at least one jury finding of a deceptive act or practice which is included among those listed in subsection 17.46(b).

■ Defendants contend the Act violates the due process requirements of the federal and state constitutions. They also contend it places an undue burden on their first amendment right of free speech. These constitutional questions are raised for the first time on appeal, and defendants rely upon the holding of this court in *Singleton v. Pennington*, 568 S.W.2d 367 (Tex.Civ. App.—Dallas 1977, writ filed), as authority for initially raising the questions here. The obvious distinction is that in *Singleton*, the plaintiff's petition failed to mention the Act or plead for any relief under it; but in this case, the Act was specifically pleaded and damages sought under it. We conclude that this is not a case in which we should consider a constitutional question which has not been presented to the trial court. *Mobile America Sales Corp. v. Rivers*, 556 S.W.2d 378, 382 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.); *Van Wart v. Van Wart*, 501 S.W.2d 359, 361 (Tex.Civ. App.—Austin 1973, no writ); *City of South Houston v. Sears*, 488 S.W.2d 169, 174 (Tex. Civ.App.—Houston [14th Dist.] 1972, no writ).

■ We also overrule defendants' contentions with respect to the proper measure of damages. The court submitted a single damage issue:

> What sum of money, if any, if paid now in cash would fairly and reasonably compensate the plaintiff for damages or losses, if any, which resulted as a direct or natural result of the acts or representations of the defendants, if any you have found, which the plaintiff relied upon to his detriment?

The jury answered $4,415.00. Defendants objected to its submission in the trial court on grounds it was global, there was no evidence or insufficient evidence, it was ambiguous and vague, and a comment on the weight of the evidence. On this appeal, defendants urge that the trial court submitted an improper measure of damages. No objection was made to the charge on this ground. The objections are too general to inform the court of their basis, and therefore fail to comply with Tex.R.Civ.P. 274. Defendants cannot now complain the charge permitted the jury to find damages based on an improper measure. *Whitson Company, Inc. et al., v. Bluff Creek Oil Company*, 156 Tex. 139, 293 S.W.2d 488 (1956); *Brazos Electric Power Cooperation, Inc. v. Taylor*, 576 S.W. 2d 117 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.); *Mowery v. Fantastic Homes, Inc.*, 568 S.W.2d 171 (Tex.Civ.App.—Dallas 1978, no writ); *Success Motivation, Inc. v. Lawlis*, 503 S.W.2d 864 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Hamilton v. Fant*, 422 S.W.2d 495 (Tex. Civ.App.—Austin 1967, no writ).

■ While section 17.50(b)(1) of the Act does not define "actual damage," we believe it to contemplate common law damages or the difference in value between that which the plaintiff parted with and that which he received.

■ Defendants contend that plaintiff failed in an essential element of his proof of damages, namely, the value of that which he received, and therefore is not entitled to any recovery. We agree that he failed to prove this element essential to his recovery of treble damages under section 17.50(b)(1). Nevertheless, the Act affords alternate remedies, and he did prove himself entitled to damages under section 17.50(b)(3). Section 17.50(b) provides that each consumer who prevails may obtain:

> (1) three times the amount of *actual damages* plus court costs and attorneys' fees reasonable in relation to the amount of work expended;
>
> (2) an order enjoining such acts or failure to act;
>
> (3) orders necessary to *restore to any party* to the suit *any money* or property, real or personal, *which may have been acquired in violation of this subchapter* ; and

(4) any other relief which the court deems proper. [Emphasis added]

■ Plaintiff pleads for the return of all moneys paid to defendant together with certain other amounts expended by him. In the next paragraph of his petition, plaintiff asks for recovery of attorneys fees and for triple the amount of damages found by the jury as provided by the Act. We interpret these to be pleadings for alternative remedies, first under section 17.50(b)(3) and second under section 17.50(b)(1). Whether the alternative pleading is intentional or not, plaintiff has alleged sufficient facts to bring his remedy under one or the other of the subdivisions depending upon the proof offered. This is contemplated by the Act as pointed out in *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977), where the Supreme Court said "the Legislature intended 'may' to indicate that the consumer has several remedies from which to choose and that the court is to grant the consumer that relief which the consumer proves a right to receive." We conclude that plaintiff is entitled to recovery under subdivision (3) of section 17.50(b).

■ We believe this interpretation to reflect the intent of the legislature because it properly anticipated that in some cases "actual damages" are not susceptible of proof with reasonable certainty. This case is an example. The machines, of course, have an ascertainable value; but the value of machines, on location as a going business, without a history of operation cannot be determined with any reasonable degree of certainty. Apparently for this very reason, the inability to ascertain value, the legislature did not provide for the trebling of damages, but for the restoring of the consideration paid; or, stated in terms of the Act, the return of that which was acquired by the seller. *See Woo v. Great Southwestern Acceptance Corporation,* 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r. e.). Also, there is greater reason for trebling damages if the measure is limited to the difference in value between what the consumer gave and what he received within section 17.50(b)(1), than if he is allowed restoration of the *entire* consideration paid as provided in section 17.50(b)(3).

There is no dispute that the amount paid to or acquired by the defendant was $3,896.00. The jury found plaintiff's damage to be $4,415.00. The excess of $519.00, according to plaintiff's testimony, consisted of expenses for automobile travel in operation of the business, cost of stamps, bank loan interest and stamp booklets. Defendants preserved no error nor make complaint on appeal with respect to these expenses. We conclude there is ample evidence in the record to support the finding of damages.

■ While subdivision (3) of section 17.-50(b) does not specifically provide for recovery of attorneys fees, we believe the intent and express purpose of the Act compels that they be included in all subdivisions of the section. The Act is to be liberally construed to promote its underlying purposes to protect consumers and to provide efficient and economical procedures to secure such protection. Section 17.44. Under section 17.50(b)(4), the court is empowered to grant any other relief which the court deems proper. It will be seen that subdivision 17.50(b)(2), providing for injunctive relief, also fails to expressly provide for recovery of attorney's fees. Yet the Supreme Court has stated in *Woods, supra,* at 669: "Thus, the individual who establishes all the elements required for injunctive relief shall receive such injunctive relief, and, supported by adequate proof, reasonable attorneys' fees and court costs." We hold that the jury's findings upon the attorneys' fees issues are proper and that plaintiff is entitled to their recovery.

■ Raulerson, the midwest regional manager of United Postage Corporation, contends that there is no evidence or alternatively, insufficient evidence to hold him liable under the Act. This is true, he contends, because his only personal contact with plaintiff occurred at some time after execution of the December 19 purchase agreement when plaintiff came to Dallas to discuss the question of his exclusive distributorship area. Of the many representations

attributed to the regional director, Walters, that involving exclusive area is the only one shown by the evidence to have been discussed by Raulerson; and, according to plaintiff, Raulerson stated: "Whatever Mr. Walters said to you, we will do." Upon this testimony, the jury found Raulerson ratified all of the representations made by Walters; and, further, that he made the following representations: plaintiff would have an exclusive distributorship area; the number of distributors in an area is limited; plaintiff would have help after the machines were installed and the company had selected high profit locations for plaintiff's machines.

These four representations are identical to (10), (11), (12) and (18), listed above, which inquired of the company's representations. No findings were sought or made as to whether they were false when made by Raulerson, or relied upon by plaintiff to his detriment.

We have pointed out in discussing defendants' first point that (18) was found to be not false and (12) not relied upon while the remaining representations, (10) and (11), we have concluded, relate to the sale of services excluded by the Act as it stood at the time of this transaction. Consequently, we find no basis for the personal liability of Raulerson.

Nor do we consider the finding of ratification of Walters' representations sufficient under the facts of this case because the evidence does not establish that Raulerson knew the other representations were made. A party cannot be held to have ratified facts unknown to him. *A. B. Lewis Co. v. Robinson*, 339 S.W.2d 731 (Tex.Civ. App.—Austin 1960, no writ); *Wichita Frozen Food Lockers v. National Cash Register Company*, 172 S.W.2d 781 (Tex.Civ.App.— Fort Worth), affirmed, 142 Tex. 109, 176 S.W.2d 161 (1943).

Plaintiff appealed from an order granting the special appearance of a third defendant, William J. Bowman. His motion to dismiss the appeal, filed in this court, is granted.

The trial court's judgment against Raulerson is reversed and rendered; the judgment against United Postage Corporation is reformed to reduce plaintiff's recovery to $4,415.00, together with attorney's fees as ordered, interest and costs and, as reformed, affirmed.