Opinion filed June 21, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed June 21, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00025-CV 

                                                    __________

 

             JOCHUM SCHIEVINK AND VICKI SCHIEVINK, Appellants

 

                                                             V.

 

                                WENDYLOU
RANCH, INC., Appellee

 



 

                                         On
Appeal from the 266th District Court

 

                                                           Erath County, Texas

 

                                                 Trial
Court Cause No. CV27457

 



 

                                                                   O
P I N I O N

 








Plaintiff landowners, Jochum Schievink and Vicki
Schievink, appeal from a summary judgment granted in favor of Wendylou Ranch,
Inc., the owner of the land surrounding the Schievinks=
property.  The Schievinks sued Wendylou
for trespass and for breaching a duty as an adjoining landowner after Rudy=s Fencing, a fence builder hired by
Wendylou, bulldozed some trees on the Schievinks=
land.  Wendylou asserted that it was
entitled to a traditional summary judgment because the undisputed summary
judgment evidence showed that Wendylou did not trespass on the Schievinks= land or instruct Rudy=s Fencing to trespass and because
Wendylou is not liable for the trespass of Rudy=s
Fencing B an
independent contractor.  The trial court
granted Wendylou=s motion
for summary judgment.  We affirm.  

                                                      Issues
and Standard of Review

In three issues on appeal, the Schievinks argue
that summary judgment was improper because there are genuine issues of fact
regarding (1) whether Wendylou breached a duty as an adjoining landowner by
failing to instruct Rudy=s
Fencing as to the property line, (2) whether Rudy=s
Fencing was an independent contractor, and (3) whether Wendylou was negligent
in failing to give instructions to Rudy=s
Fencing even if it was an independent contractor.  

We will apply the well-recognized standard of
review for summary judgment.  A trial court
must grant a traditional motion for summary judgment if the moving party
establishes that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). 
In order for a defendant to be entitled to summary judgment, it must
either disprove an element of each cause of action or establish an affirmative
defense as a matter of law.  Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 
Once the movant establishes a right to a summary judgment, the nonmovant
must come forward with evidence or law that precludes summary judgment.  City of Houston
v. Clear Creek
Basin Auth., 589 S.W.2d 671, 678‑79
(Tex.
1979).  When reviewing a summary
judgment, the appellate court takes as true evidence favorable to the
nonmovant.  Am. Tobacco, 951
S.W.2d at 425; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548‑49
(Tex. 1985). 

                                                      Summary
Judgment Evidence

The summary judgment evidence established that the
Schievinks own approximately 300 acres of land and that their land is
completely surrounded by Wendylou, a 4,500-acre exotic game ranch.  Wendylou hired Rudy=s
Fencing to build a game fence around parts of Wendylou.  The fence work was done in stages.  The manager of Wendylou, Mike Odell, gave
verbal instructions to Rudy=s
Fencing about where the fence should be. 
Odell=s
deposition and affidavit indicate that Rudy=s
Fencing was an independent contractor, not an employee.  Rudy=s
Fencing used its own equipment and, other than being told where to start, stop,
or put a gate, was not instructed as to the details of building the fence or
clearing the fence line.








Odell walked the boundary line with Rudy=s Fencing=s
on-site supervisor, Efrain Rulio Villareal. 
They walked the fence line in phases, only going as far as the fence
builders were expected to go in a given period of time.  Odell checked the progress occasionally but
did not supervise the day-to-day activities. 
As each phase of the fence was completed, they walked the fence line for
the next phase.  Odell instructed Rudy=s Fencing to build the new fence two to
three feet inside the old fence running along the boundary line to keep from
encroaching upon the Schievinks=
property.  Odell had not yet walked the
fence line with Villareal at the point where the trespass occurred on July 20,
2004; he had expected the previous phase through a creek to take longer than it
did.

In order to build the fence, Rudy=s Fencing used a bulldozer to clear the
fence line.  The bulldozer was operated
by Ignacio Bustamante.  At the instruction
of Villareal, who was confused about his location, Bustamante cut the boundary
fence and followed another fence row into the Schievinks=
property.  The southern boundary line of
the Schievinks= property
was zigzagged, and Bustamante made a right turn at a corner where he should
have gone left.  Bustamante had bulldozed
a strip of land approximately 15 feet wide by 1,600 feet long before Jochum
Schievink came and informed Villareal that they were on his property.

                                         Trespass
and Duty of an Adjoining Landowner








In their first issue, the Schievinks contend that
there is a genuine issue of fact concerning Wendylou=s
breach of a duty owed to them as adjoining landowners to instruct Rudy=s Fencing as to the correct property
line.  The Schievinks assert that a
landowner who intends to have timber cut on his property owes a duty to
adjoining landowners to ascertain the boundary line of the adjoining land with
diligence and care and that a failure to discharge this duty subjects the
landowner to liability for trespass.  See
Burris v. Krooss, 563 S.W.2d 875, 877 (Tex. Civ. App.CEastland 1978, no writ); see also
Kirby Lumber Corp. v. Karpel, 233 F.2d 373, 375 (5th Cir. 1956).  A person may be liable for trespass if he
aids, assists, advises, or causes another to enter the property.  Kirby Lumber, 233 F.2d at 375; McDaniel
Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex. Civ. App.CBeaumont
1934, writ ref=d); Restatement (Second) of Torts ' 158(a) & cmt. j (1965).  Under this theory of liability, a landowner
may be liable even though the person entering the adjoining land is an
independent contractor.  Kirby Lumber,
233 F.2d at 375; Cummer Mfg. Co. v. Copeland, 35 S.W.2d 758 (Tex. Civ.
App.CTexarkana
1931, no writ).

Wendylou established that there were no genuine
issues of fact regarding the trespass or the breach of any duty that Wendylou
may have owed to the Schievinks to ascertain the correct boundary line.  The summary judgment evidence established
that Wendylou hired Rudy=s
Fencing to construct a game fence and that Wendylou=s
manager gave instructions to Rudy=s
Fencing as to the correct location of the boundary.  Odell instructed Rudy=s
Fencing to follow the old fence line, which was the boundary, and to stay two
to three feet inside the old fence.  Rudy=s Fencing did not follow Odell=s instructions; instead, Bustamante cut
the old fence and entered the Schievinks=
property.  Villareal admitted that he was
confused and that he made the decision to turn right instead of left.  Contrary to what had been the customary
operating procedure, Villareal did not ask Odell for any further instructions
before bulldozing the next section of fence line even though Villareal and
Odell had not yet walked that section.

The Schievinks contend that Rudy=s Fencing followed flags or markers
onto the Schievinks= property
and that these flags had been placed there by Odell.  However, the summary judgment evidence does
not support their contention.  Although
there were some flags in the vicinity of the boundary line, Odell averred that
these were not markers for Rudy=s
Fencing to follow, that he had given the fence builders verbal instructions
only, and that he did not put out any of the flags or markers in question.  Odell indicated in his deposition that the
flags were probably placed there by the surveyor.  According to Jochum Schievink, the Schievinks= property had been surveyed immediately
before they bought it and there were survey markers at various points because
the land had first been offered in parcels. 
The survey was dated February 2003.








Villareal=s
deposition testimony revealed that he saw flags or markers on the gate, found
the corner pin in the ground, saw the dairy in the distance, and mistakenly
thought that he was at the southwest corner of the Schievinks= property instead of a corner in the
midsection of their southern boundary. 
Villareal admitted that Odell told him to stay two to three feet inside
the old fence.  The deposition testimony
of Bustamante showed that he did not see any ribbons or markers on any fence
and that he followed Villareal=s
directions when he entered the Schievinks=
property.  Although Bustamante did not
see any ribbons, he stated that there were markers at the corners of the
boundary.  He had no knowledge of who
marked the corners.  Furthermore, the
Schievinks did not know who put out any of the flags, and they had no knowledge
of anybody from Wendylou instructing Rudy=s
Fencing to enter their property.

We hold that there is no genuine issue of fact
concerning Wendylou=s breach
of any duty that it owed to the Schievinks to instruct Rudy=s Fencing as to the correct property
line.  The first issue is overruled.  

                                                           Independent
Contractor

The Schievinks contend in their second issue that
the summary judgment evidence created a genuine issue of fact as to whether
Rudy=s Fencing
was an independent contractor.  If Rudy=s Fencing, Villareal, and Bustamante
were employees of Wendylou, rather than independent contractors, then Wendylou
could be liable for their negligent acts under the doctrine of respondeat
superior.  Under this doctrine, an
employer is vicariously liable for the negligence of an employee acting within
the scope of his employment even though the employer has not personally
committed a wrong.  Baptist Mem=l Hosp. Sys. v. Sampson, 969 S.W.2d
945 (Tex.
1998).  Conversely, a person who hires an
independent contractor is generally not liable for the acts of an independent
contractor unless the employer exercises sufficient control over the details of
the independent contractor=s
work.  See Fifth Club, Inc. v. Ramirez,
196 S.W.3d 788, 791-92 (Tex. 2006); Lee
Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 783 (Tex. 2001). 









An independent contractor has been defined as Aany person who, in the pursuit of an
independent business, undertakes to do a specific piece of work for other
persons, using his own means and methods, without submitting himself to their
control in respect to all its details.@  Indus. Indem. Exch. v. Southard, 160
S.W.2d 905, 907 (Tex.
1942).  There are several factors to
consider in determining whether or not a worker is an independent
contractor:  (1) the independent nature
of his business; (2) his obligation to furnish necessary tools, supplies, and
material to perform the job; (3) his right to control the progress of the work,
except as to final results; (4) the time for which he is employed; and (5) the
method of payment, whether by time or by the job.  Tex.
A & M Univ. v. Bishop, 156 S.W.3d 580, 584-85 (Tex. 2005) (citing Indus. Indem. Exch.,
160 S.W.2d at 906).  When the material
underlying facts are not in dispute and can give rise to only one reasonable
conclusion, the issue of whether a worker is an employee or an independent contractor
is a question of law.  Id. at 585.

The summary judgment evidence in this case
established that Rudy=s
Fencing was a sole proprietorship that had been in the business of building
fences since 1981.  Rudy=s Fencing generally employed about
twenty-five employees.  Wendylou
solicited bids for the fence-building job, and Rudy=s
Fencing submitted a bid that was priced by the foot.  Upon being awarded the job, Rudy=s Fencing provided a crew of five
people to do the job at Wendylou.  Rudy=s Fencing also furnished its own
equipment and tools.  Nobody at Wendylou
oversaw the day-to-day activities of the fence building.  Odell checked on the fence occasionally and
told Villareal where to build the fence and the gates.  Odell did not control the details of building
the fence or clearing the fence line.

The Schievinks point to summary judgment evidence
indicating that Odell was the Aboss.@ 
While the Schievinks=
attorney was deposing the owner of Rudy=s
Fencing, the following exchange occurred:

Q: Did you recognize that Mr. Odell was the boss
of this job and told you what he wanted done and when? 

 

A: I did, because when -- when I turned in my bid
to Mr. Elliott, he said -- at that time that the very first phase, it was
[Odell]=s dad
that was in charge.  Then he went ill and
then [Odell] took over.  So he said, AJust if anything comes up and you need,
if you=ve got
any questions, ask [Odell].@

 

Q: Mike Odell was the boss?

 

A: At that point then, after -- after his father.

 

The context in which Odell was referred to as the Aboss@
does not indicate that Odell controlled Rudy=s
Fencing, Villareal, or Bustamante as an employee but, rather, that Odell was
the Aboss@ in charge of the ranch and, as ranch
manager, told them where to build the fence and where to put the gates.  There is no summary judgment evidence
indicating that Rudy=s
Fencing was an employee of Wendylou; the summary judgment evidence establishes
as a matter of law that Rudy=s
Fencing was an independent contractor. 
Consequently, the second issue is overruled.  

 

 








                                                Control
over Independent Contractor

In their third issue, the Schievinks assert that
there is a genuine issue of fact concerning the negligence of Wendylou in
failing to give instructions to Rudy=s
Fencing concerning the trespass.  The
Schievinks argue that, even if Rudy=s
Fencing was an independent contractor, Wendylou retained sufficient supervisory
control over Rudy=s Fencing
to subject it to liability for failing to use reasonable care in the exercise
of its supervisory control so as to prevent injury to others.  See Exxon Corp. v. Quinn, 726 S.W.2d
17, 19-20 (Tex. 1987); Redinger v. Living,
Inc., 689 S.W.2d 415, 418 (Tex.
1985).  In Redinger, the court
adopted the following rule: 

One
who entrusts work to an independent contractor, but who retains the control of
any part of the work, is subject to liability for physical harm to others for
whose safety the employer owes a duty to exercise reasonable care, which is
caused by his failure to exercise his control with reasonable care.  

 

689 S.W.2d at 418.  

Assuming that Wendylou had a duty to ascertain the
correct boundary line and to instruct Rudy=s
Fencing in that respect and that Wendylou retained control over the location on
which Rudy=s Fencing
was to build the fence, Wendylou had a duty to use reasonable care in the
exercise of that control.  However, as
discussed with respect to the Schievinks=
first issue, there is no summary judgment evidence indicating that Wendylou
breached any duty owed to the Schievinks. 
Wendylou=s manager
gave verbal instructions to Rudy=s
Fencing; walked the fence line in sections with the on-site supervisor for Rudy=s Fencing, showing him where to build
the fence and gates; and instructed Rudy=s
Fencing to stay two to three feet inside the old fence B
which was the boundary.  The summary
judgment evidence is undisputed that Rudy=s
Fencing, on its own initiative, made the decision to cut the old fence and
enter the Schievinks=
property with the bulldozer.  Therefore,
there is no genuine issue of fact concerning whether Wendylou breached a duty
to use reasonable care in the exercise of any control it retained over Rudy=s Fencing.  The Schievinks=
third issue is overruled. 








We hold that Wendylou established by summary
judgment evidence that it did not commit the trespass; that it did not aid,
assist, advise, or cause Rudy=s
Fencing to enter the Schievinks=
property; that it did not fail to ascertain the correct boundary line; that it
did not fail to instruct Rudy=s
Fencing as to the correct boundary; that Rudy=s
Fencing was an independent contractor; and that Wendylou did not breach any
duty that it owed to the Schievinks.  The
Schievinks failed to come forward with more than a scintilla of evidence to
create a genuine issue of material fact that would preclude summary
judgment.  Wendylou, therefore, was
entitled to judgment as a matter of law, and the trial court properly granted
Wendylou=s motion
for summary judgment.  

The judgment of the trial court is affirmed.

 

 

AUSTIN McCLOUD

SENIOR JUSTICE

 

June 21, 2007

Panel
consists of:  Wright, C.J.,

Strange,
J., and McCloud, S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.