Esther **WOO**, Appellant,

v.

**GREAT SOUTHWESTERN ACCEPT-
ANCE CORPORATION et
al., Appellees.**

**No. 5745.**

Court of Civil Appeals of Texas,
Waco.

March 30, 1978.

Rehearing Denied April 27, 1978.

Danny C. Wash and David L. Hodges, Wash & Hodges, Waco, for appellant.

Vance Dunnam and Jim Meyer, Dunnam, Dunnam & Dunnam, Waco, for appellees.

John L. Hill, Atty. Gen., Marleen Debra Lowenthal, Asst. Atty. Gen., Austin, for amicus curiae.

HALL, Justice.

The parties to this appeal are appellant Esther Woo, who was cross-plaintiff in the trial court, and appellees Success Motivation Institute, Inc. (hereinafter SMI) and Great Southwestern Acceptance Corporation (GSAC), cross-defendants on the trial. The uncontradicted proof shows that GSAC is the wholly-owned subsidiary and alter-ego of SMI.

SMI sells distributorships for the marketing of certain motivational products prepared by it. In 1970, and by amendment in 1973, SMI entered into a consent decree and order with the Federal Trade Commission which directed SMI to cease and desist from the following actions in connection with the sale of its distributorships:

"(1) Representing, directly or by implication, that

(a) No special ability or aptitude is required to become a successful franchisee or distributor of respondent's products; misrepresenting, in any manner, the experience, background, aptitudes or abilities required to become a successful franchisee or distributor of respondent's products.

(b) Franchisees or distributors will encounter no difficulty in selling respondent's products; misrepresenting, in any manner, the degree of effort required to sell respondent's products.

(c) Respondent's franchisees or distributors are uniformly successful and all enjoy substantial income; misrepresenting, in any manner, the degree of success or amount of income realized by respondent's franchisees or distributors.

"(2) Using any deceptive scheme, device or plan to obtain leads to prospective franchisees or distributors or to induce persons to become franchisees or distributors.

"(3) (a) Failing to determine in good faith, prior to having a prospective franchisee or distributor enter into an agreement to become a franchisee or distributor of respondent's products, through the evaluation of the personal history of the prospect and the administration of bona fide personality evaluation tests and within the error tolerances reasonably expected in the use of such predictive instruments, whether the prospect possesses the aptitude and abilities necessary to successfully sell respondent's products and to recruit other persons to sell respondent's products.

(b) Failing to inform prospective franchisees or distributors of the results of such evaluation and testing reasonably in advance of the execution of the agreement to become a franchisee or distributor.

"(4) Failing to furnish to prospective franchisees or distributors reasonably prior to such persons agreeing to become franchisees or distributors, a written tabulation or statistical summary showing, on an accumulative and comparative basis for each fiscal year, beginning with the fiscal year 1966, for each of the corporate respondent's operating divisions the following information:

(a) The median and mean gross sales to respondent's franchisees or distributors exclusive of initial inventories sold to new franchisees or distributors during the fiscal year.

(b) The number of franchisees or distributors at the beginning of the fiscal year, the number appointed during the year, the number terminated during the year, the number retained at the end of the year, and the length of time that those retained at the end of the year have been respondent's franchisees or distributors.

(c) The foregoing information shall be tabulated as a running 4-year analysis so that prospective franchisees or distributors will be furnished such information for the 4 fiscal years immediately preceding the year in which the information is to be furnished, provided that, the information for the fiscal year most recently completed prior to the year in which the information is to be furnished will be made available within 45 days of the close of that fiscal year.

"(5) Failing to deliver a copy of this order to cease and desist to all present and future salesmen or other persons engaged in the advertising and sale of franchises or distributorships to sell respondent's products, and failing to secure from each salesman or other person a signed statement acknowledging receipt of said order."

In October, 1974, by written contract, appellant Woo purchased a distributorship from SMI. The contract listed the cash price as $10,950.00. It listed the time price as $11,927.17 which included a time price differential of $977.17, and a cash down payment of $6,000.00. Woo made the cash down payment, and executed a promissory note in favor of SMI for the balance of $5,927.17. The note called for 29 monthly payments. It permitted acceleration at the holder's option in the event of default, al-

lowed 10% interest after maturity on any unpaid balance, and provided for 15% attorneys' fees. Woo also executed a security agreement on the distributorship and the materials furnished her to secure payment of the note.

SMI assigned the note and security agreement to GSAC. After paying $1,385.00 on the note, Woo defaulted. GSAC accelerated the note and initiated this suit against Woo in February, 1976, for the balance on the note of $4,542.17, for 10% per annum on the balance from February 1, 1976, and for 15% attorneys' fees.

Woo answered GSAC's suit, then impleaded SMI and set up an action against GSAC and SMI for damages. By way of answer to GSAC's suit on the note and in support of her action for damages, Woo alleged that GSAC is the alter-ego of SMI; that in connection with the sale of the distributorship to her SMI committed detailed deceptive trade practices and unconscionable conduct violating every requirement of the consent order between SMI and the Federal Trade Commission. She sought treble damages for the violations under subsections (a)(1), (3), and (b)(1) of § 17.50 of the Deceptive Trade Practices—Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41 et seq. She also sought alternate remedies we need not detail.

The pertinent parts of the Deceptive Trade Practices—Consumer Protection Act, supra, provide as follows:

§ 17.43. Cumulative Remedies. The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law. . . .

§ 17.44. Construction and Application. This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

§ 17.46. Deceptive Trade Practices Unlawful.

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

§ 17.49. Exemptions.

(b) . . . The provisions of this subchapter do apply to any act or practice prohibited . . . by a rule or regulation of the Federal Trade Commission.

§ 17.50. Relief for Consumers.

(a) A consumer may maintain an action if he has been adversely affected by any of the following:

(1) the use or employment by any person of [a false, misleading, or deceptive acts or practices in the conduct of any trade or commerce] declared to be unlawful by Section 17.46 of this subchapter;

.  .  .  .  .

(3) any unconscionable action or course of action by any person  .  .  .

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended.

At the beginning of the trial, the parties stipulated that the balance due and owing on the note was $4,542.17, and that if GSAC recovered judgment against Woo on the note then the judgment should also provide for interest at 10% from February 1, 1976, on the note balance, plus 15% attorneys' fees.

The case was tried to a jury. In connection with the special issues submitted, the court gave the following instructions to the jury:

"The term 'false, misleading or deceptive acts or practices' means an act or series of acts the overall impression of which has a capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking, or credulous."

"By the term 'acts or practices in the conduct of any trade or commerce' means

the performing, carrying on or doing of some action or deed in the advertising, offering for sale, sale, lease or distribution of any work, labor, service, or property, either real, personal or otherwise."

"By the term 'unconscionable conduct' is meant conduct that is harsh and shocking to the conscience."

Answering special issues numbered as follows, the jury

Found (1) that SMI represented to Woo that no special ability or aptitude was required to become a successful distributor or SMI's products; (2) that the representation was a false, misleading or deceptive act or practice in the conduct of a trade or commerce; and (4) that the representation was a proximate cause of damages to Woo; but (3) failed to find that the representation was an unconscionable action or course of action.

Found (5) that SMI misrepresented to Woo the experience, background, aptitudes or abilities required to become a successful distributor of SMI's products; (6) that the misrepresentation was a false, misleading or deceptive trade, act, or practice in the conduct of a trade or commerce; and (8) that the misrepresentation was a proximate cause of damage to Woo; but (7) failed to find that the misrepresentation was an unconscionable action or course of action.

Found (9) that SMI represented to Woo that distributors will encounter no difficulty in selling SMI's products; (10) that the representation was a false, misleading or deceptive act or practice in conduct of a trade or commerce; and (12) that the representation was a proximate cause of damage to Woo; but (11) failed to find that the representation was an unconscionable action or course of action.

Found (13) that SMI misrepresented to Woo the degree of effort required to sell SMI's products; (14) that the misrepresentation was a false, misleading or deceptive act or practice in the conduct of a trade or commerce; and (16) that the misrepresentation was a proximate cause of damage to Woo; but (15) failed to find that the misrepresentation was an unconscionable action or course of action.

Found (17) that SMI misrepresented to Woo that SMI's distributors are uniformly successful and all enjoy a substantial income; (18) that the misrepresentation was a false, misleading or deceptive act or practice in the conduct of a trade or commerce; and (20) that the misrepresentation was a proximate cause of damage to Woo; but (19) failed to find that the misrepresentation was an unconscionable action or course of action.

Found (28) that SMI failed to determine in good faith, through the evaluation of the personal history of Woo and the administration of bona fide personality evaluation tests and within the error tolerances reasonably expected in the use of such predictive instruments, whether Woo possessed the aptitude and abilities necessary to successfully sell SMI's products and to recruit other persons to sell the products; (28–A) that the failure was a false, misleading or deceptive act or practice in the conduct of a trade or commerce; (28–B) that the failure was an unconscionable action or course of action; and (29) that the failure was a proximate cause of damage to Woo.

Found (30) that SMI failed to inform Woo of the results of the evaluation and testing (inquired about in special issue number 28) prior to her purchase of the distributorship; and (30) that the failure was a false, misleading or deceptive act or practice in the conduct of a trade or commerce; but (32) failed to find that the failure was an unconscionable action or course of action, and (33) failed to find that the failure was a proximate cause of damage to Woo.

Found (34) that SMI failed to furnish to Woo the following information for a sufficient length of time and in such manner as to give her a reasonable opportunity to comprehend the information: A written tabulation or statistical survey showing on an accumulative and comparative basis for each fiscal year for the four fiscal years immediately preceding the year in which the information is to be furnished, for each of the operating divisions of SMI, (a) the

median and mean gross sales to SMI's distributors exclusive of initial inventory sold to new distributors during the fiscal year, and (b) the number of distributors at the beginning of the fiscal year, the number appointed during the year, the number terminated during the year, and the length of time that those retained at the end of the year had been SMI distributors; found (35) that the failure to furnish the information was a false, misleading or deceptive act or practice in the conduct of a trade or commerce; and found (37) that the failure was a proximate cause of damage to Woo; but (36) failed to find that the failure was an unconscionable action or course of action.

Found (42) that the acts found to have been committed by SMI in the answers to special issues 1, 5, 9, 13, 17, 28, 30 or 34 were a proximate cause of Woo executing the $5,927.17 promissory note.

Found (42–A) that the following sums of money would reasonably compensate Woo for damages found by the jury to have proximately resulted from the acts found to have been committed by SMI in the answers to special issues 1, 5, 9, 13, 17, 28, 30 or 34:

a. Purchase price of the distributorship: $10,950.00.

b. Amount of interest contracted for on the promissory note: $1,000.00.

c. Necessary expenses involved in setting up and operating the distributorship: $2,875.00.

Found (44) that $3,000.00 was a reasonable fee for the services of Woo's attorney.

Found (45) that SMI's representation to Woo that no special ability or aptitude was required to become a successful distributor of SMI's products (found by the jury in answer to special issue number one) was false; (46) that Woo did not know the representation was false; (47) that the representation was made with the intent and design of inducing Woo to purchase the distributorship; and (48) that Woo relied upon the representation, believing it to be true, and was thereby induced to purchase the distributorship; and (49) failed to find that Woo would have purchased the distrib-

utorship if the representation had not been made.

Found (50) that SMI's representation to Woo that distributors will encounter no difficulty in selling SMI's products (found by the jury in answer to special issue number nine) was false; (51) that Woo did not know the representation was false; (52) that the representation was made with the intent and design of inducing Woo to purchase the distributorship; and (53) that Woo relied upon the representation, believing it to be true, and was thereby induced to purchase the distributorship; and (54) failed to find that Woo would have purchased the distributorship if the representation had not been made.

Found (55) that SMI's representation to Woo concerning the degree of effort required to sell SMI's products (found by the jury in answer to special issue number thirteen) was false; (56) that Woo did not know the representation was false; (57) that the representation was made with the intent and design of inducing Woo to purchase the distributorship; and (58) that Woo relied upon the representation, believing it to be true, and was thereby induced to purchase the distributorship; and (59) failed to. find that Woo would have purchased the distributorship if the representation had not been made.

Found (60) that Woo should be awarded $30,000.00 as exemplary damages against SMI. In connection with this issue the jury was given the following instruction:

" 'Exemplary damages' means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment in addition to any amount which may have been found by you as actual damages."

Reciting the parties' stipulations relating to the note, GSAC moved for judgment *non obstante veredicto* against Woo for the unpaid balance on the note in the amount of $4,542.17, plus interest and attorneys' fees, and for foreclosure on its security agreement. Additionally, GSAC and SMI jointly moved for judgment *non obstante veredicto*

that Woo take nothing against them, asserting (1) that special issue number 42–A is no finding of any damage or any measure of damage and also is not supported by any evidence; (2) that special issue number 42 can form no basis for the recovery of damages and is therefore immaterial; (3) that Woo waived any right to recover exemplary damages by failing to request or obtain a finding that any representations or statements were willfully made by SMI or that it knew the representations or statements were false; (4) that the measure of damage for fraud or misrepresentation is the difference in the price paid and the actual value of that which was bought at the time it was purchased, and that by failing to offer evidence of the value of the distributorship at the sale in question Woo waived her right to recover any actual damages; (5) and that by failing to request or obtain jury findings of any legal measure of damage, Woo waived her right to recover actual and exemplary damages and attorneys' fees. The motions were overruled.

Special issue 42–A was conditionally submitted upon an affirmative answer by the jury to any one of special issues numbered 1, 5, 9, 13, 17, 28, 30 or 34. GSAC and SMI moved the court to disregard the answer to subsection (a) of special issue 42–A upon the following grounds:

1. It is an immaterial finding for the reason that it is merely a finding of the purchase price of the distributorship and is not a finding of any damage or measure of damage which might have been sustained by Woo.
2. Woo waived any right to recover the difference between the price paid for the distributorship and its actual value by failing to submit an issue on actual value at the time of purchase over movants' objection to the charge for failure to submit this element of Woo's damage, which was overruled, and the answer in question is therefore immaterial.
3. It is an immaterial finding because there was no evidence adduced showing the actual market value of the distributorship at the time of sale.

4. It is both immaterial and without support in the evidence because the special issue upon which it is based was submitted disjunctively dependent upon a finding or findings of various representations by SMI, some of the findings of representations were not supported by any evidence, and it is impossible to determine which of said findings the answer in question was based upon.

The motion was granted.

GSAC and SMI moved the court to disregard the answer to subsection (b) of special issue 42–A upon the following grounds:

1. It is not supported by any evidence.
2. It is not a finding of a legal measure of damages or element thereof and is therefore immaterial.
3. It is both immaterial and without support in the evidence because the special issue upon which it is based was submitted disjunctively dependent upon a finding or findings of various representations by SMI, some of the findings of representations were not supported by any evidence, and it is impossible to determine which of said findings the answer in question was based upon.

The motion was granted.

GSAC and SMI moved the court to disregard the answer to subsection (c) of special issue 42–A upon the following grounds:

1. It is not supported by any evidence. Particularly, there is no evidence that any expenses incurred by Woo in setting up and operating the distributorship were reasonable in amount or that they were necessary.
2. The answer is immaterial because no issue was submitted to the jury inquiring as to what loss was sustained by Woo by reason of her necessary expenses in setting up and operating the distributorship, although movants objected to the charge for the failure to submit this element, and the objection was overruled.

3. The answer is immaterial because it does not find any expenses actually incurred by Woo, but is merely a finding of expenses involved in setting up and operating the distributorship.

4. The answer is immaterial because it is not a finding of any damage or any measure of damage but is merely a finding of some expenses.

5. It is both immaterial and without support in the evidence because the special issue upon which it is based was submitted disjunctively dependent upon a finding or findings of various representations by SMI, some of the findings of representations were not supported by any evidence, and it is impossible to determine which of said findings the answer in question was based upon.

The motion was granted.

GSAC and SMI moved the court to disregard the answer to special issue 44 on the ground that it, too, was submitted in the disjunctive. The motion was overruled.

GSAC and SMI moved the court to disregard the answer to special issue 60 upon the following grounds:

1. It is not supported by any evidence.

2. The answer is immaterial because issues were not submitted to the jury inquiring whether representations made by SMI were known by it to be false or were willfully made, although movants objected to the charge for the failure to submit this element and the objection was overruled.

3. The answer is immaterial because there was no submission to the jury nor finding by the jury of causal connection between representations by SMI and the exemplary damages finding in question.

4. The answer is immaterial because the issue upon which it is based does not specify the acts by SMI for which exemplary damages should be awarded, although movants objected to the issue on this ground and the objection was overruled.

The motion was granted.

Woo moved for judgment on the verdict which she asserted entitled her to a recovery against SMI for trebled actual damages allegedly totaling $44,400.00, exemplary damages of $30,000.00, and attorneys' fees of $3,000.00. Alternatively, Woo asserted that she was at least entitled to recover as actual damages the total paid by her on the contract which was shown by uncontradicted proof. The motion was overruled.

Disregarding the jury's answers to special issues 42–A and 60, the court rendered judgment on the remainder of the verdict awarding Woo a recovery of $3,000.00 against GSAC and SMI, jointly, and decreed that GSAC take nothing against Woo. This appeal was perfected from that order.

The main problem posed by the parties, and we believe the controlling question in the case, is the rule by which Woo's damages were to be measured under the Deceptive Trade Practices Act.

The terms "adversely affected" and "actual damages" used in § 17.50(a) and § 17.50(b)(1) are not defined in the Act. GSAC and SMI assert that the measure of Woo's damages was the difference between the price she paid for the distributorship and its value at the time she bought it; that without a finding of the market value of the distributorship at the time of sale to her she failed to prove damage; and that the finding of the sale price of the distributorship was accordingly properly disregarded. In turn, Woo argues that under the Act she was entitled to recover her actual pecuniary loss. She expressly pleaded for recovery of the consideration paid plus expenses she incurred in attempting to set up and operate the distributorship.

In the various jurisdictions, three rules of damages have been formulated in common law actions for fraud and deceit: the "loss of bargain" rule, the "out of pocket rule" and the "equitable" or "flexible rule" that tailors damages in a proper case to reach the fair and equitable result of properly compensating the defrauded party and

avoiding injustice. See, Annotation, 13 A.L.R.3rd 875, §§ 3, 4, 6.

The case of *Success Motivation Institute, Inc. v. Lawlis,* 503 S.W.2d 864 (Tex.Civ.App. —Houston [1st Dist.] 1973, writ ref'd n.r.e.) was a common law fraud action factually similar to our case which was brought prior to the effective date of the Deceptive Trade Practices Act. In that case the court said [at 503 S.W.2d 867]:

"The general common law rule as to the measure of damages recoverable by a defrauded purchaser of property is the difference between the value of that which he has parted with, and the value of that which he has received under the agreement. However where there is pleading of pecuniary loss, which the evidence shows to be directly traceable to the wrongful act complained of and to be the proximate result thereof, such loss can be recovered."

The Act in question clearly resulted from the Legislature's recognition of the inadequacies of traditional common law remedies in certain deceptive trade practices. In § 17.43 it is stated that the remedies provided in the Act "are in addition to any other procedures or remedies provided for in any other law"; and § 17.44 provides that the Act shall be "liberally construed and applied to promote its underlying purposes" of protecting consumers against the false, misleading, and deceptive business practices it condemns.

■ We believe the Act was intended to permit the adversely affected plaintiff to recover the greatest amount of "actual damages" he has alleged and established by proof was factually caused by the defendant's conduct. This rule serves the dual purpose of the Act of encouraging consumers to litigate their grievances and of deterring unlawful conduct. See, *Woods v. Littleton,* 554 S.W.2d 662, 670–671 (Tex.Sup. 1977). In our case it permits Woo a recovery of the consideration paid by her for the distributorship as her actual damages.

The undisputed proof in the case before us shows that Woo purchased the distributorship for $10,950.00. This price included the franchise, and packets of merchandise worth $300.00 each wholesale. Woo made a cash down payment of $6,000.00, and executed the promissory note in question for the balance of the purchase price. She made payments totaling $1,385.00 on the note. During several months of attempting to operate the distributorship she succeeded in selling only two of the packets. She sold them at their retail price of $600.00 each, thereby making a profit of $600.00.

■ The jury findings set forth above establish that the execution by Woo of the distributorship purchase agreement and the attendant note resulted from the fraud and deceptive practices of SMI. For this reason, the court properly set aside the note and denied GSAC recovery on it. However, the court should have awarded Woo the recovery of the purchase price paid by her totaling $7,385.00 less $1,200.00 representing the value of the packets sold by her and the profit she made on the sales. Under the Deceptive Trade Practices Act, Woo is entitled to have the difference trebled for her total damages of $18,555.00. Under the Act, she was also entitled to the $3,000.00 attorneys' fees, and the court properly allowed this recovery.

Inasmuch as the court set aside the note, it properly disregarded the jury's answer to special issue 42–A(b).

■ Woo testified that while she was attempting to operate the distributorship she opened three offices, employed salesmanagers and salesmen, and incurred expenses totaling $3,475.00. The jury's answer of $2,875.00 to special issue 42–A(c) represents its finding on this testimony, less the $600.00 profit made by Woo on the sales. There is no evidence that the expenses were reasonable or necessary. It was incumbent upon Woo to make this proof, and without it the finding was properly disregarded on motion by GSAC and SMI. 17 Tex.Jur.2d 290, Damages, § 230.

■ Finally, Woo asserts the court erroneously disregarded the jury's answer to special issue 60 finding $30,000.00 exempla-

ry damages. It is the general rule, applicable here, that to support an award of punitive damages the act complained of must partake of a wanton and malicious nature and that it is not sufficient that the act be merely unlawful or wrongful. *Ware v. Paxton,* 359 S.W.2d 897, 899 (Tex.Sup.1962). In fraud cases, however, it is also the general rule that exemplary damages may be awarded "when the plaintiff has suffered actual damage as the result of fraud intentionally committed for the purpose of injuring him" which our Supreme Court classes as "wilful and deliberate fraud." *Dennis v. Dial Finance & Thrift Company,* 401 S.W.2d 803, 805 (Tex.Sup.1966). There are no findings that SMI's actions were willful or malicious or intentionally committed for the purpose of injuring Woo, and those facts are not conclusively established by the proof. Therefore, the motion to disregard the jury's finding on exemplary damages was properly granted.

The remaining points and contentions of the parties are overruled.

The trial court's judgment is reformed to provide that Woo shall recover $18,555.00 from SMI and GASC, jointly, in addition to the $3,000.00 attorneys' fees allowed by the court. As reformed, the judgment is affirmed.