Arnold D. RAYE, Appellant,

v.

FRED OAKLEY MOTORS, INC., Appellee.

No. 05–81–01324–CV.

Court of Appeals of Texas, Dallas.

Jan. 18, 1983.

Larry Feldman, Dallas, for appellant.

Nathan K. Griffin, Dallas, for appellee.

Before STOREY, SPARLING and WHITHAM, JJ.

SPARLING, Justice.

In a suit brought under the Deceptive Trade Practices Act, the jury awarded Raye, appellant, $3,500.00 in damages plus attorney's fees. Appellee, Oakley Motors, moved for judgment notwithstanding the verdict, claiming that there was no evidence of misrepresentation or breach of warranty by Oakley Motors, and that the damage special issue submitted an improper measure of damages. The motion for judgment NOV was granted, and a take nothing judgment rendered against Raye. We agree that the damage issue submitted an improper measure of damages and affirm the judgment of the trial court.

Raye agreed to purchase a Dodge van from Oakley Motors in December, 1978. While Raye was arranging the financing of the van, a motorist drove his car into the van while it was parked on the Oakley Motors lot. Raye observed the damage and then accepted delivery of the damaged van in reliance on Oakley Motor's promise to repair. Although repairs were made, Raye asserted that he was not satisfied with the repairs. Raye kept possession of the van and sued for damages in the amount of $12,000, which represented the amount of the note executed to a bank for the purchase price of the van. The jury found that

Oakley Motors made material misrepresentations and breached a warranty. It awarded damages "[f]or the monies which Plaintiff [Raye] is obligated to pay in the future to Bank in connection with purchase money loan on the automobile." The jury thus awarded an amount equal to the unpaid portion of the purchase money note, but refused to award the amount already paid on the note. Section 17.50(b)(1) of the Deceptive Trade Practices Act, 1973 Tex. Gen.Laws, ch. 143, § 1, at 327, (amended 1979), provides that a consumer who prevails under the Deceptive Trade Practices Act may obtain the amount of actual damages found by the trier of fact. "Actual damages," though not defined by the act, means damages recoverable at common law, *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *United Postage Corp. v. Kammeyer,* 581 S.W.2d 716, 722 (Tex.Civ.App.—Dallas 1979, no writ).

■■■ Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties, *Wright v. Davenport,* 44 Tex. 164, 167 (1875); *Valley Datsun v. Martinez,* 578 S.W.2d 485, 490 (Tex.Civ.App.—Corpus Christi 1979, no writ). A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages. *Chrysler Corp. v. Schuenemann,* 618 S.W.2d 799, 805 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Likewise, when a warrantor's repairs are valueless, the cost of those repairs becomes a proper measure of actual damages, *Smith v. Kinslow,* 598 S.W.2d 910, 913 (Tex.Civ.App.—Dallas 1980, no writ). The market value of the sold item or the market value of the cost of

repairs may be established by the price set by the vendor or warrantor, under the assumption that the price he set was not in excess of market value, *Smith,* 598 S.W.2d at 914. This equation—cost equals market value—may also be found in a hybrid form of the difference-in-value theory of actual damages. Stated differently, "[t]he correct measure of damages ... [may be] the difference between the amount *actually paid* [by the defrauded party] ... and the fair *market value* of the [item] as delivered." (emphasis supplied) *Sobel v. Jenkins,* 477 S.W.2d 863, 868 (Tex.1972); *Jack Criswell Lincoln-Mercury, Inc. v. Haith,* 590 S.W.2d 616, 619 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

Appellant cites *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290 (Tex. Civ.App.—Waco 1978, writ ref'd n.r.e.) and *United Postage Corp. v. Kammeyer,* 581 S.W.2d 716 (Tex.Civ.App.—Dallas 1979, no writ) as authority for the present measure of damages, namely, the purchase price of the van, or a portion thereof. In *Woo,* actual damages were sought under the Deceptive Trade Practices Act for misrepresentations made in the sale of a self-improvement motivational distributorship to plaintiff Woo. The court held that the actual damage was the purchase money for the distributorship, reduced by the money Woo earned from the distributorship. This amount was trebled as required by § 17.-50(b)(1) of the Deceptive Trade Practices Act, 1973 Tex.Gen.Laws, ch. 143, § 1, at 327, (amended 1979).

In contrast, this court in *United Postage Corp.,* sustained recovery of the purchase money under § 17.50(b)(3) of the Deceptive Trade Practices Act, 1973 Tex.Gen.Laws, ch. 143, § 1, at 327, (amended 1979),[1] which neither depends on a finding of actual damages nor allows the amount to be trebled. The rationale for the utilization of subsection (3) was that "actual damages" could

---

1. § 17.50   Relief for Consumers

. . . . .

(b) In a suit filed under this section, each consumer who prevails may obtain;

. . . . .

(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter. . . .

not be ascertained with reasonable certainty when the subject of the misrepresentation was a going business with no history of operation.

The implied rationale of *Woo* is that the distributorship, like the business in *United Postage Corp.*, was incapable of evaluation because of the inherent nature of the business—both cases held that recovery was the amount of consideration paid, yet *Woo* held § 17.50(b)(1) was the section under which this should be accomplished and *United Postage Corp.*, held that § 17.50(b)(3) was applicable.

■ We need not choose which subsection of § 17.50(b) is applicable for the return of purchase money because the jury was charged in the present case to determine what sum of money would compensate appellant "for his damages, if any, resulting from the conduct you have found." We hold that the word "damages," as used in the charge, means "actual damages"; therefore the question narrows as to whether or not *Woo* applies. We hold that it does not.

■ *Woo* is the only authority cited, or found, where actual damages are measured by proof of cost, rather than market value, of the product purchased where there is no proof that the product was without value in the hands of the purchaser. It was not established that the repairs to the van were valueless in the hands of the appellant, and we cannot find from the record that proof of the market value of a van is incapable of reasonable determination, as compared to the difficulty of proving the market value of the motivational distributorship in *Woo*. We would, therefore, limit *Woo* to circumstances where the inability to prove market value results from the fact that there is no discernible "market" for the item. It follows that if there is no "market" it cannot be sold and is therefore rendered valueless. In this sense, the holding in *Woo* is consistent with the holdings in *Smith,* and *Chrysler Corp.*

Normally, if a defect in a new product is the subject of a deceptive trade practice suit, the proper measure of damages would be either the difference between fair market value of the product as bargained for, and the fair market value of the product received, *Wright; Valley Datsun;* or, in the alternative, the difference between the actual cost of the product and the fair market value of the product received, under the authority of *Sobel* and *Jack Criswell Lincoln-Mercury, Inc.* These measures of damages are more appropriate than tying damages to the cost of repairing the defect, because the purchaser bargained for a *new* product, not a mended one.

If, however, a defect becomes apparent after the product has been used, then the damages should be the value of the repairs[2] not the difference in value of the product itself. For example, the owner of an old automobile may choose to have a damaged fender repaired even though the car has value only as "scrap." For breach of warranty of that repair, the difference in the before and after value of the car may result in no actual damages, because an automobile with a properly repaired fender may have no greater scrap value than that same automobile with a damaged or improperly repaired fender. Therefore, continuing the example, proper compensation to the owner of the car should be the reasonable, not actual, cost of repairing the car to its "bargained for" condition.

■ If repairs were attempted, the standard should be the reasonable cost of repairing the product from its condition after the attempted repairs. This is a better solution than measuring the difference between the reasonable cost of repairing to the "bargained for" condition and the reasonable value of the repairs actually performed. The defective or partial repairs, although they may have some abstract value, do not necessarily contribute toward the repairs promised.[3]

---

2. "Value of repairs" and "reasonable cost of repairs" are used interchangeably.

3. For instance, an application of a coat of paint, in compliance with a bargain, may require the complete removal of an earlier, faulty, applica-

**292**

In the present case Raye knowingly purchased the van in its damaged condition, thus the bargain did not contemplate the delivery of an unmended item. Therefore, we hold that in this case the appropriate measure of damages is the reasonable cost of repairing the van to the condition contemplated by the bargain from the condition Oakley Motors left it after their attempted repairs.

Again, in response to the special issue for actual damages, the jury awarded Raye a portion of the actual cost of the van. Unlike *Smith* or *Woo* there is no evidence that would allow an "actual cost" measure of damages. Accordingly, we hold that the trial court properly disregarded the jury's answer to the damage issue. We therefore, affirm.

tion of paint, even though the earlier coat of paint has some value.