**METRO FORD TRUCK SALES, INC., Appellant,**

v.

**William E. DAVIS, Appellee.**

**No. 2–85–080–CV.**

Court of Appeals of Texas, Fort Worth.

May 14, 1986.

Vial, Hamilton, Koch & Knox and Bruce W. Bowman, Jr., Dallas, for appellant.

Boyd & DuBose, Timothy M. Fults, Robert C. Fults, Dallas, for appellee.

Before FENDER, C.J., and HOPKINS and HUGHES (Retired, Sitting by Assignment), JJ.

## OPINION

FENDER, Chief Justice.

This is a Deceptive Trade Practice case, TEX.BUS. & COM.CODE ANN. secs. 17.-41–17.63 (Vernon Pamph.Supp.1986), in which the purchaser of a used truck recovered judgment for $534,016.00 plus attorneys' fees of $20,000.00 from the seller. Appellant is Metro Ford Truck Sales, Inc. ("Metro"). Appellee, William E. Davis, will be called "Davis."

We affirm.

Davis was an independent trucker who purchased a 1979 Kenworth diesel truck for $48,500.00 from Metro in July of 1981 and traded in his old truck. In spite of the fact that the truck was (according to Davis) "fantastic" looking and a "real attention getter", on Davis' first trip, both windshields blew in. This was the first of many problems encountered which, according to Davis, resulted in numerous repairs, lost running time, lost hauling contracts and eventually the repossession of the truck in October of 1982, which forced Davis out of business. Several months after the truck's purchase, Davis learned that the truck had previously been extensively damaged in a wreck.

Davis asserted that Mike Murphy, Metro's salesman, knew of the previous substantial damage to the truck but that he falsely represented that the truck was in "mint" and "top" condition and that it had not been wrecked.

The suit brought by Davis under the Deceptive Trade Practices Consumer Protection Act (DTPA) did not contain a cause of action based upon contract or breach of warranty, but was restricted to the deceptive representation and unconscionability features of the act. *See* TEX.BUS. & COM.CODE ANN. sec. 17.46 (Vernon Pamph.Supp.1986). Damages were sought for difference in value, loss of use, lost earnings, mental anguish, loss of credit and additional (exemplary) damages because of knowing behavior. Metro responded by filing a counterclaim against Davis under the DTPA for "unloading" Davis' trade-in truck in a condition which caused it to break down completely on its first demonstration to a customer.

The jury found in Davis' favor on Metro's counterclaim and found that Metro was guilty of various deceptive practices which were the producing cause of the following damages:

| | |
|---|---|
| Difference in actual value of the truck and its value as represented . | $ 30,000. |
| Loss of use of truck ................ | 74,016. |
| Davis' lost earnings ................ | 80,000. |
| Mental anguish ................... | 50,000. |
| Loss of credit ..................... | 50,000. |
| Additional damages ................ | 250,000. |
| Total Damages to Davis found by jury ............................. | $534,016. |

Judgment on the verdict was entered as $534,016.

■ We will look first at the threshold question posed in point of error two where we are asked to reverse or to limit the recovery to actual damages because of the failure of Davis to prove that the notice requirement of section 17.50A of the DTPA had been met. We note that appellee did plead that the required notice had been given. Salient features of the notice provision contained in the DTPA state:

Section 17.50A. Notice: Offer of Settlement

(a) As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 30 days before filing the suit advising the person of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

TEX.BUS. & COM.CODE ANN. sec. 17.-50A (Vernon Pamph.Supp.1986).

This same contention has been addressed by the Houston Court of Appeals in *Pool Co. v. Salt Grass Exploration, Inc.*, 681 S.W.2d 216 (Tex.App.—Houston [1st Dist] 1984, no writ). In *Pool Co.* the court said:

Appellant is incorrect, however, in asserting that failure to plead and prove notice, in the absence of defendant's objection as to lack of notice, is fatal to a cause of action brought under the DTPA. Appellant filed no special exceptions to appellee's petition, it filed no plea in abatement, it did not object to testimony pertaining to appellee's cause of action under the DTPA or as to attorney's fees, and it filed no trial court motions expressing disagreement with the pleadings or the testimony. Rule 90 of the Rules of Civil Procedure provides that any defect, omission or fault in a pleading, either of form or substance, which is not pointed out by exception, in writing, and brought to the attention of the trial court, shall be deemed waived by the party seeking reversal on such account.

The pleading and proof of notice under section 17.50A of the DTPA is not proof of the claim asserted, but merely a prerequisite to bringing the suit on the claim. Its purpose is to facilitate the settlement of claims by giving the alleged wrongdoer an opportunity to compromise the claim rather than expose itself to a claim for additional damages and attorney's fees allowed by the Act. Appellant may not initially claim on appeal that he was deprived of that right.

Moreover, in order to contest a party's right to sue, an objection must be made by a plea in abatement in the trial court and the issue cannot be urged for the first time on appeal. That principle has been consistently followed by Texas courts. *Regal Construction Co. v. Hansel*, 596 S.W.2d 150, 151 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Rimco Enterprises, Inc. v. Tex. Electric Service*, 599 S.W.2d 362 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) (failure to object that corporation whose charter had been forfeited had no capacity to sue or defend); *Gonzales v. Gonzales*, 484 S.W.2d 611 (Tex.Civ.App.—El Paso 1972, no writ) (failure to object to averment of residence requirement in divorce case); *Kaherl v. Kaherl*, 357 S.W.2d 622 (Tex.Civ.App.—Dallas 1962, no writ); *Lobstein v. Watson*, 186 S.W.2d 999 (Tex.Civ.App.—Eastland 1945, no writ) (failure of real estate dealer suing for commission to allege that he was licensed).

As appellant made no objection in the trial court concerning appellee's failure to plead and prove 30 days notice before filing suit, as required by section 17.-50A(a), all objections were waived.

*Id.* at 219.

As occurred in *Pool*, Metro made no objection in the trial court concerning Davis' failure to prove that 30 days notice had been given. Therefore, the objections were waived and may not be raised for the first time on appeal.

Metro claims that our holdings in *Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872 (Tex.App.—Fort Worth 1984,

no writ) and *Sunshine Datsun, Inc. v. Ramsey,* 680 S.W.2d 652 (Tex.App.—Amarillo 1984, no writ) should apply. We find that these cases are distinguishable because in both cases, there were *objections* lodged with the trial court concerning the lack of 30 days' notice. Point of error two is overruled.

█ Point of error number one addresses the trial court's refusal to admit into evidence the sales contract and the warranty disclaimer signed by Davis. The contract language provided that the truck was sold "with no warranty" and the warranty disclaimer stated that the vehicle was sold "as is". The contract, in detail, disclaimed any implied or express warranty against any defect which may exist or may occur.

At trial, Davis objected to the admission of the disclaimer/waiver upon two grounds. The first ground of objection was based on the prohibition against the use of such waivers, which is stated in section 17.42 of the DTPA as follows:

Section 17.42. Waivers: Public Policy

Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a business consumer with assets of $5 million or more according to the most recent financial statement of the business consumer prepared in accordance with generally accepted accounting principles that has knowledge and experience in financial and business matters that enable it to evaluate the merits and risks of a transaction and that is not in a significantly disparate bargaining position may by written contract waive the provisions of this subchapter, other than Section 17.-55A.

TEX.BUS. & COM.CODE ANN. sec. 17.42 (Vernon Pamph.Supp.1986). The other objection to admission of the waiver documents was based upon the proposition that, since waiver is an affirmative defense, it should have been pled by Metro under TEX.R.CIV.P. 94. We hold that both objections were well-taken and the evidence was properly excluded.

As to the first objection, Metro urges that such disclaimers have been expressly upheld and declared admissible in *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392 (Tex. 1982). In that case both parties agreed that the implied warranty of fitness in a newly constructed home can be waived by the use of proper language. *Id.* at 393.

The waiver language used in the contract in *G–W–L* was evaluated by the court in regard to 1) the implied warranty of fitness created in *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968), and 2) the implied warranty of merchantibility created by section 2.314 of the Texas Business and Commerce Code. The court in *G.W.L.* also considered the provision of section 2.316 of the Business and Commerce Code, which deals with the exclusion or modification of the implied warranty of merchantibility. Section 17.42 of the DTPA, concerning the prohibition against waivers, did not figure into the claims of the litigants in *Humber,* nor in the *G.W.L.* opinion. Consequently, it provides no precedent applicable to the facts of the case before us.

Metro also relies on *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) in support of their contention that waivers and disclaimers are admissible to counter a DTPA cause of action. In *McCrea,* the plaintiff sued under two causes of action, one of which was breach of warranty as a violation of the DTPA. The other was false representations as a violation of the DTPA.

The court in *McCrea* held that a waiver of warranties waives a DTPA cause of action to sue for *breach of warranty* under the DTPA. It is clear that the court did not intend the holding to include suits for false representation under the DTPA. This is apparent because the court in *McCrea* goes on to discuss the misrepresentation claims under the DTPA. *Id.* at 759.

█ In the case before us, we are dealing with a cause of action based solely upon false representations and not upon

breach of warranty. We hold that the waiver of warranty did not waive appellee's cause of action for misrepresentation under the DTPA and that the waiver was properly excluded. *Cf. McCrea*, 685 S.W.2d at 758–59. Point of error one is overruled.

■ Points of error numbers three and four present "no evidence" and "insufficient evidence" attacks upon the jury verdict with regard to damages for loss of use of Davis' truck.

A review of the record demonstrates ample evidence to support the jury's finding with regard to loss of use. Two witnesses gave testimony on this issue, Davis and Mike Bybee. Davis testified that the reasonable rental value was $600.00 per week plus 6.5 cents per mile. Bybee, who had recently been in the market for rental trucks, testified that the reasonable rental value was $592.00 per week plus 6.3 cents per mile. All testimony on this matter was admitted without objection. Davis testified that as a result of the problems upon which his claims in this lawsuit were based, the truck was repossessed in October, 1982. There is no evidence to the contrary. Accordingly, the period for which the jury was entitled to award loss of use damages was October, 1982 through the date of trial, December, 1984, a period of approximately twenty-five (25) months or one hundred eight (108) weeks.

Additionally, the jury heard testimony concerning the number of miles driven by Davis in a given year (160,000), together with the number of miles driven by other truckers such as Frances Padgett (80,000). Both Davis and Bybee testified that mileage is a factor to be considered in the reasonable rental value of a substitute truck.

Davis suggests that the jury could logically have calculated its award for loss of use as follows:

| | | |
|---|---|---|
| 108 weeks × $592/week | = | $63,936.00 |
| 160,000 miles × 6.3 cents/mile | = | 10,080.00 |
| Amount jury actually awarded | | $74,016.00 |

In *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 119 (Tex.1984), the Supreme Court of Texas expressly approved this identical method for establishing the amount of damages incurred for loss of use of a vehicle. As in this case: 1) the plaintiff and an expert witness in the leasing and rental business testified concerning the reasonable rental value; 2) the reasonable rental value was established to be a certain sum per week plus an additional sum per mile; and 3) the time period for which an award was allowed was from the time the plaintiff lost the use of the vehicle until the trial date. The Supreme Court's holding included the following:

> To prove up loss of use, the reasonable rental value of a substitute automobile is sufficient evidence to support an award of actual damages. The period of compensatory loss of use will be the amount of time the plaintiff was deprived of the loss of use of the automobile. The evidence put before the jury may be a reasonable rental value by the day, week, or month.
>
> \* \* \* \* \* \*
>
> In this case Luna has suffered compensable inconvenience for loss of use of her car. The rental value, whether by the day, week, or month, is indicative of the loss suffered.

*Id.* at 119.

Applying the well recognized standards of review of "no evidence" and "insufficient evidence" points as dictated by *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) and *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), to the record before us we must overrule points of error numbers three and four.

■ Points of error numbers five and six challenge the trial court's allowance of recovery for loss of credit on "no evidence" and "insufficient evidence" grounds. At the outset, Metro claims that damages for loss of credit are limited to actions involving breaches of contract such as were recognized by the Texas Supreme Court in *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685 (Tex.1981). Davis, however, points out

that in *Duval County Ranch Company v. Wooldridge*, 674 S.W.2d 332, 336 (Tex.App.—Austin 1984, no writ) it was held that the rationale applied to contract actions in *Mead* is equally applicable to fraud actions. We will follow the rule announced in *Duval* and hold that actual damages for loss of credit are recoverable in an action under the Deceptive Trade Practices Act based upon misrepresentation.

■ The testimony in the record bearing upon loss of credit appears as follows. Davis testified that his truck was repossessed in 1982 because he "had run out of money" and could not make the payments. He testified that he had always been able to make payments on his rigs before but that he had spent all of his money on this truck and he had lost the contracts to haul that he had had when he bought the truck. He testified that he formerly had a Triple A credit rating but, having had to borrow money just to survive, he was then in debt $35,000.00 to friends and that he had even tried to borrow from financial companies but was turned down because of the repossession.

Davis' testimony constitutes competent and credible evidence supporting the jury's verdict as to damages for loss of credit, especially since his testimony was uncontroverted. Applying the appropriate standards of review for "no evidence" and "insufficient evidence" claims, *see In re: King's Estate*, 244 S.W.2d at 661–62, we overrule points of error numbers five and six.

Points of error numbers seven and eight are likewise "no evidence" and "insufficient evidence" attacks upon the award of damages for lost earnings in the amount of $80,000.00. We hold that such award is adequately supported in the record.

Davis testified that he had a gross income of at least $120,000.00 per year prior to buying the truck from Metro. He further testified that expenses incurred in earning that amount of income totaled not more than $60,000.00 per year during the same time period. Davis' testimony went on to establish that this income level changed "immediately" upon purchasing the truck, that the causes of this change were the problems with the truck and the loss of trucking contracts resulting therefrom, and that those problems were the direct result of the misrepresented condition of the truck which induced Davis to purchase it.

As previously noted, Davis testified that the truck was repossessed in October, 1982. He testified that, since his truck was repossessed, he was compelled to go back to work as a mechanic at a truck shop earning a gross salary of $20,000.00 per year. All of this testimony was admitted without objection, and none of the testimony is controverted in any way. It is suggested by Davis that such evidence would naturally engender a calculation of previous annual net income ($60,000.00) less present wages ($20,000.00) resulting in an annual loss of $40,000.00, extended for a period of two years for an aggregate lost income of $80,000.00. We share the opinion that the above stated process, if used by the jury, would have been appropriate under the facts adduced.

Metro's assertion in its brief, without supporting authority, that "lost earnings are not a proper measure of damages in a car case anyway" is simply unsupported by either authority or sound reasoning.

Section 17.50 of the DTPA provides that a plaintiff may recover his "actual damages" in addition to other statutory remedies. Noting the admonition that Section 17.44 of the Act provides as follows:

> [the DTPA] ... shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading or deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection,

the court in *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290 (Tex. Civ.App.—Waco 1978, writ ref'd. n.r.e.), rejected the defendant's contention that the traditional "out of pocket" measure of

damages must govern suits under the DTPA. As held by the court:

[t]he [Deceptive Trade Practices and Consumer Protection] Act clearly resulted from the Legislature's recognition of the inadequacies of traditional common law remedies in certain deceptive trade practices. In Section 17.43 it is stated that the remedies provided in the Act "are in addition to any other procedures or remedies provided for in any other law"; and Section 17.44 provides that the Act shall be "liberally construed and applied to promote its underlying purposes" of protecting consumers against the false, misleading and deceptive business practices it condemns.

We believe the Act was intended to permit the adversely affected plaintiff to recover the greatest amount of "actual damages" he has alleged and established by proof was factually caused by the defendant's conduct. This rule serves the dual purpose of the Act of encouraging consumers to litigate their grievances and of detering unlawful conduct....

*Id.* at 298.

Additionally, with regard to the review of a trial court record, it is important to distinguish between uncertainty concerning the fact of damages and uncertainty concerning the amount of damages. There is no uncertainty as to the fact that Davis incurred significant damage and that Davis suffered a loss of earnings. Metro's claim is that the *amount* of these damages was not adequately established.

As noted above, only "reasonable certainty" of amount is required in proving lost earnings. Metro did not controvert Davis' evidence at trial, and that evidence is sufficient to support the jury's award. As specifically held by the Texas Supreme Court:

There is a distinction between uncertainty as to the fact of damages and uncertainty merely as to the amount of damages. "Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery". *Southwest Battery*

*Corp. v. Owen,* 131 Tex. 423, 427–8, 115 S.W.2d 1097, 1099 (1938); *Hindman v. Texas Lime Co.,* 157 Tex. 592, 305 S.W.2d 947 (1957).

*McKnight v. Hill & Hill Exterminators, Inc.,* 689 S.W.2d 206, 207 (Tex.1985).

The most recent decision concerning this question is *Keller v. Davis,* 694 S.W.2d 355 (Tex.App.—Houston [14th Dist.] 1985, no writ). In that case, the defendant contested on appeal the sufficiency of the evidence to support the trial court's award of lost profits. The trial court's judgment was affirmed, with the court holding as follows:

Texas law states that it is not necessary for lost profits to be subject to exact calculation. The amount of loss must be shown by competent evidence with reasonable certainty. In the case of an established business, pre-existing profits are admissible to show projected lost profits with reasonable certainty. *White v. Southwestern Bell Telephone Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1098–1099 (1938).

\* \* \* \* \* \*

Davis had operated a vacuum truck business for several years. He was qualified to testify from his own knowledge as to his profit margin. Such evidence was admissible and uncontroverted by Keller. Apparently, Keller did not file a special exception to gain further information about Davis's counter-suit for lost profits, nor did he attempt pre-trial discovery of Davis's business records with which he might have impeached Davis's testimony. *See, e.g., Finn v. Finn,* 658 S.W.2d 735, 746 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). We find the evidence sufficient to support the $15,000.00 awarded Davis for lost profits and overrule points of error one and two.

*Id.* at 356–57.

Contrary to Metro's assertion, lost profits are recoverable when properly proved in a DTPA action. *Cf. White v. Southwestern Bell Telephone Company,* 651 S.W.2d 260, 262–63 (Tex.1983). The Texas Su-

preme Court noted in that case that lost profits need not be capable of "exact calculation" in order to be recoverable. Lost profits are appropriately awarded where, as in this case, the evidence establishes the amount with "reasonable certainty". The Texas Supreme Court's holding was:

> To recover for a loss of profits, it is not necessary that the loss be susceptible to exact calculation. *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938). It is sufficient that the amount of loss is shown by competent evidence with reasonable certainty. *Id.* Where there is an established business, pre-existing profits may be used to evidence the amount of loss with reasonable certainty. *Atomic Fuel Extraction Corporation v. Estate of Tom Slick*, 386 S.W.2d 180, 188 (Tex.Civ. App.—San Antonio 1964, writ ref'd n.r.e. *per curiam*, 403 S.W.2d 784 (Tex.1965); *Richker v. Georgandis*, 323 S.W.2d 90, 98 (Tex.Civ.App—Houston 1959, writ ref'd n.r.e.). Furthermore, in calculating the loss in profits, the normal increase in the business which might have been expected in light of past developments and existing conditions may be considered. *Southwest Battery Corporation v. Owen*, 115 S.W.2d at 1099.

*Id.* at 262.

■ Finally, Metro's concluding assertion that "foreseeability" was not established with regard to the jury's award for lost earnings misinterprets the causation standard applicable to DTPA cases. Foreseeability, as an element of proximate cause, is not the governing standard. Section 17.50 of the Act establishes "producing cause" as the appropriate causation standard. The trial court's definition of "producing cause" as "an efficient, exciting or contributing cause, which, in a natural and continuous sequence, produced the damages or harm complained of, if any" was approved by the Texas Supreme Court in *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975), and was given to the jury in this case without objection by either party. Metro has therefore, in any event, waived any complaints it may have had to the charge.

Lost earnings are recoverable in a DTPA case when the evidence establishes the amount with "reasonable certainty". *Cf. White v. Southwestern Bell Telephone Company*, 651 S.W.2d at 262–63. The evidence in the case at bar, which was both uncontroverted and admitted without objection, clearly and with reasonable certainty establishes the amount of Davis' lost earnings. Metro presented no objection at trial to either the special issue or the accompanying jury instruction on this issue. Accordingly, since the jury's award is adequately supported in the record, points of error numbers seven and eight are overruled.

■ The sufficiency of the evidence to support the award of damages for mental anguish is challenged in point of error number fifteen. In his brief, Davis summarizes his testimony, stating that "he has been humiliated, forced to borrow from friends money which he cannot repay, and plagued with worry and lost sleep". Further, his business as an independent trucker was destroyed and he has been "forced to return to a salaried position as a mechanic, working for someone else as he did prior to realizing his 'dream' of becoming independent."

On the other hand, Metro states first that "anger, frustration and aggravation" will not support damages for mental anguish, citing *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980). Metro also contends that "there must be a showing of more than worry, anxiety, vexation or anger", citing *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). In *Freedom Homes*, it was said:

> Mental anguish has been defined as "a high degree of mental suffering" and "intense pain of body or mind". [Citations omitted.] The term "anguish" is derived from the Latin word "anguis," a snake, referring to the writhing and twisting of the animal body when in

great pain. [Citations omitted.] In order to recover for mental anguish, it is necessary to show something more than mere worry, anxiety, vexation or anger as was shown here.

*Id.* at 718.

Davis cites several authorities which point out that a jury verdict on such issue is necessarily governed by subjective, rather than objective criteria and that, since the jury is in the best position to weigh the severity and extent of the mental anguish, much discretion must be allowed the jury in reaching its verdict. *See Green v. Meadows*, 527 S.W.2d 496 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Port Terminal Railroad Association v. Macaluso*, 450 S.W.2d 873 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ).

In reviewing the factual sufficiency of the evidence presented to the jury and upon which it awarded damages to Davis in the instant case, we have found it helpful to make a comparison of this evidence with that presented in *North Star Dodge Sales, Inc., v. Luna*, 653 S.W.2d 892, (Tex.App.—San Antonio 1983), *affirmed in part, reversed and rendered in part, Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984); *North Star Dodge Sales, Inc., v. Luna*, 672 S.W.2d 304 (Tex.App.—San Antonio 1984, no writ) (opinion on remand to court of appeals).

Our Supreme Court in *Luna* first established the rule that a jury finding of "knowingly," such as we had in the case before us, in connection with conduct constituting a deceptive trade practice is sufficient to support recovery of mental anguish damages. *Luna*, 667 S.W.2d at 117. The evidence of mental anguish which the San Antonio Court of Appeals had before it in *Luna* is set out in its first opinion, reported at 653 S.W.2d at page 897, and is described as follows:

Luna testified to receiving medical attention for migraine headaches which began several months after the purchase of the automobile from North Star Dodge. In a colloquy between appellant and her counsel, as to the producing cause of the headaches, appellant stated:

A: I get nervous. I get depressed. I get mad.

Q: Anger?

A: Sometimes, because I feel like there is nothing I can do but wait. I get angry because I feel like I was done wrong, and I feel like I am right. And I feel like this should not have happened the way it did.

Q: Okay. We have worry, anger, nervousness, anxiety, flustration [sic]. What else, or does that cover it?

A: What else is there. I guess that is about it.

Appellee also testified the prescribed medication "makes me miss work, and makes me sleepy." The deleterious side effects of the drug prompted Luna to consult Joseph A. Ward, psychotherapist, in an effort to develop alternative means of treatment which would alleviate, or lessen, her need to continue the medication.

In discussing the causes of appellee's anxiety and tension, Ward testified:

There seem to be a few contributory factors for her anxiety and tension. It seems to me that at the top of the list was her loss of independence; or phrased another way, having to depend on other people. Ms. Luna is a very bright and yet independent type person. And when you remove some of her independence it causes anxiety and resulting at times in migraine headaches. She experiences loss of independence specifically by having to depend on others to take her to work, pick her up from work. In other words, a loss of transportation. She became unhappy because she was unable to participate in any of the usual activities. Also coupled with that were some other factors, the problems that she has had preparing for Court, and also an impending marriage that she is contemplating, and also some academic problems that she has had with her younger son.

*See Luna,* 653 S.W.2d at 897–98. Upon remand, the court of appeals, found such evidence to be sufficient. *See Luna,* 672 S.W.2d at 306.

We, likewise, hold that the evidence before us is not a showing of the "mere worry, anxiety, vexation or anger" described in *Freedom Homes,* 598 S.W.2d at 718, but that substantial anguish is here shown by the humiliation of a successful, independent truck driver having been reduced to a salaried mechanic with the concomitant worry and lost sleep engendered by the destruction of his business, and the inability to repay the substantial sums lent to him by friends. Point of error number fifteen is overruled.

 In its points of error numbers ten, eleven, twelve and thirteen, Metro presents for the first time, on appeal, objections to the form and substance of certain special issues presented to the jury. The complaints stem from the form of the conditional submission of certain issues and such complaints assume the validity of Metro's objection to the substance of special issues 2 and 3. Metro's objections were not presented to the trial court as objections to its charge or in any other fashion. We do not address the merits of these objections since they have been effectively waived by the failure to call them to the attention of the trial court and permit that court to consider, evaluate and rule upon them. The Texas Rules of Civil Procedure clearly provide that a party may not sit idly by in the trial court and, upon an unfavorable verdict, object to the court's charge for the first time in the appellate court. *See First State Bank, Morton v. Chesshir,* 634 S.W.2d 742 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.), and TEX.R.CIV.P. 274 and 279.

We hold that no alleged error has been preserved for review by points of error numbers ten through thirteen and they are overruled.

In points of error numbers nine and fourteen, Metro claims, respectively, that the additional damages found by the jury under section 17.50(b)(1) of the DTPA are excessive, as is the judgment for total damages. Regarding the ninth point of error concerning additional damages, Metro states that the only damages supported by law and evidence are $30,000 for "[the] difference in value of [the] truck" and that maximum additional damages would be $90,000 for an aggregate of $120,000.

In its fourteenth point, Metro argues that a remittitur should be ordered as to all damages awarded beyond the suggested figure of $120,000. Because these two points are presented without reference to any authority in rule, statute or precedent, *see Estate of Blardone,* 604 S.W.2d 278, 283 (Tex.Civ.App.—Corpus Christi), writ ref'd n.r.e. *per curiam,* 608 S.W.2d 618 (Tex.1980), they are overruled.

 The final point of error, number sixteen, appears *in toto* as follows:

The jury finding of unconscionability is not supported by sufficient evidence, or is against the great weight of evidence.

*Argument and Authorities Under Point of Error No. 16*

While unconscionability was defined as contained in the DTPA, Metro believes that had the jury been furnished with the evidence on the warranty disclaimer that the issue would not have been answered as it was. It is one thing to say that Metro took advantage of Davis to a grossly unfair degree when it did not repair the truck and quite another thing when Davis knew he was purchasing the truck in whatever condition he got it. Considering the affirmative representations made to Davis and the spirit of the DTPA we find that point of error number sixteen is without merit, and is overruled.

The judgment of the trial court is affirmed.